GILBERT v. CHICAGO, R. I. & P. RY. CO. et al.

(Circuit Court, D. Minnesota, Third Division. July 1, 1903.)

1. MASTER AND SERVANT—INJURY OF SWITCHMAN—QUESTIONS FOR JURY.

Where plaintiff, who was foreman of a switching crew in the yards of defendant's railroad, was injured by having his foot caught in the space between a guard rail and main rail, which was not blocked, and it was shown to have been the practice of defendant in such yards to keep the guard rails blocked, but that the blocking in this particular place had been out for some days or weeks, and it was not shown that plaintiff knew such fact, the court is not justified in taking from the jury the question of defendant's want of ordinary care, or the question whether plaintiff, in the exercise of ordinary care, should have known of the defect, and assumed the risk therefrom.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff was foreman of a switching crew in railroad yards, and was engaged in distributing cars on various tracks, the movements of the engine being directed by signals from him. In attempting to uncouple a car from another, both of which were equipped with automatic couplers, with a lever and crank, operated from the side, for raising the pin, while such cars were in motion, he tried the crank on the rear car; and, it failing to raise the pin, he went between the cars and raised it with his hand, but while there caught his foot between the rails, and was run over and injured. The crank on the forward car was on the other side, and he might have used it by going around, or could have stopped the engine by a signal. It did not appear that the appliance was defective, but the pin was probably held by pressure while the cars were moving. *Held* that, in choosing the more dangerous method in cutting off the car, plaintiff was guilty of contributory negligence, which precluded his recovery for the injury.

At Law. Action for personal injury. On motion by defendant for direction of verdict.

H. Barton and J. E. Samuelson, for plaintiff.
Stringer & Seymour, for defendants.

LOCHREN, District Judge. Plaintiff introduced his testimony and rested his case, whereupon counsel for defendants moved the court to instruct the jury to return a verdict for the defendants. After argument by respective counsel, the court rendered the following decision, orally:

Upon this motion of the defendant that the court direct a verdict in favor of the defendant, the rule necessarily and properly is that the evi-

dence in the case adduced by the plaintiff shall be construed most favorably for the plaintiff, and that any facts which establish or tend to establish or support the plaintiff's cause of action shall, upon a motion of this kind, be regarded in that light; and such motion can only be granted when, upon giving such construction to the evidence and such favorable consideration to the facts, it appears clearly that the facts proven will not support a verdict for the plaintiff.

It appears from the evidence that the plaintiff, at the time of his injury, was employed in the yard of the defendant company at Iowa Falls, in the state of Iowa, as a foreman of a switching crew, and that he had been in that employment for a considerable length of time. Like most work connected with railroading, it is a dangerous and hazardous employment, and the hazards and dangers connected with it are, in general, such as everybody knows and appreciates. It is the duty of the master, under circumstances of this kind, to use ordinary care to furnish a safe place to work and safe appliances, and to use such care as, under the circumstances, in view of the hazards that may be expected, would be taken by men of ordinary intelligence, prudence, and capacity. Now, in order to recover, it is necessary for the plaintiff to establish that the defendant was guilty of negligence, which is the omission of that care which it should have exercised, under the circumstances, to provide a safe place for the plaintiff to perform this work, and safe appliances, and also that the injury was the proximate result of this want of care, and that it was caused by no negligence on the part of the plaintiff himself. It was the duty of the plaintiff to use ordinary care for his own protection in the performance of such work. The defendant makes certain claims in support of this motion, but I do not think it claims that there is no evidence to go to the jury upon the question of lack of ordinary care on the part of the defendant.

It appears from the testimony that it was the practice of the defendant, in this yard, to keep the guard rails and frogs blocked, and that it was deemed by the defendant to be a proper precaution for the protection of its employés that this care should be taken; and it seems it was ordinarily taken throughout the yards. The evidence also shows that in this particular instance the blocking of the guard rail had been out for some length of time—at least for several days, if not weeks, before the night of this accident; and there is certainly evidence which would make it proper to submit the question to the jury, as to whether there was not a lack of care on the part of the defendant in respect to the blocking of this guard rail, and as to whether, from the lapse of time, its condition should not have been observed, had there been proper inspection employed, and the defect removed before the occurrence of this accident. It is also claimed that the evidence conclusively shows that this defect was known to the plaintiff himself, or by the exercise of ordinary care should have been known to him, and that, therefore, when he consented to perform this work upon that track, he assumed the risk. The testimony of one of the witnesses is that he himself, personally with another brakeman, observed this condition of this guard rail some time prior to this accident. He is uncertain as to time. But there is no evidence that the plaintiff himself ever observed it, and there is not such a certainty in respect to the

time that it remained unblocked as would warrant me in assuming that it had been there for so long that the plaintiff must be held to have been informed of the condition, or even to hold that, in the exercise of ordinary care, he ought to have observed it, and that in performing the work after that time he assumed the risk or hazard. I do not think that the evidence is in such condition that I would be warranted in taking that question from the jury.

The only question remaining is as to whether the evidence of the plaintiff shows clearly that he himself was guilty of other negligence which contributed to his injury. The law in that respect is, if the defendant railroad company was guilty of negligence, and such negligence was a proximate cause of the injury, but the plaintiff himself was also guilty of negligence, or a lack of ordinary and proper care, under the circumstances, which also directly contributed to the injury, then the plaintiff has no cause of action, and cannot recover. The serious question in this case is whether this evidence on the part of the plaintiff does not show that he himself was guilty of contributory negligence in going between the cars as he did, under the circumstances, in the attempt to uncouple the two cars. It appears that the cars were supplied with automatic couplers, and with an appliance to raise the pin, thus allowing the cars to be uncoupled without going in between them—a rod, with a crank, or something of that kind, at the end of it, to raise the pin, the purpose of which was to obviate the danger to the brakemen or switchmen of going in between the cars when in motion for the purpose of uncoupling them; a practice that was understood to be dangerous, though perhaps absolutely necessary under the old system of coupling cars with a link and pin, with no appliance for raising the pin without passing between the cars so that the pin could be reached by the hand of the brakeman. Now, in this case the plaintiff had cut off one car, which had been kicked, as it is called, towards the switch where it was intended to go; and having notified the switchman as to the next switch to be turned, where the next car was intended to go, he attempted to cut off that car. The testimony is his own, and is not contradicted, as to what he did about cutting off that car. He attempted to raise the pin by means of the rod and crank which were on the car for that purpose; that it did not work, and he did not succeed in raising the pin in that way. The coupler on the next car was exactly a similar one, but the handle or rod was on the other side of the car, and could not be reached from the side on which plaintiff was; and that without attempting to stop the car, and go around it to uncouple it by the other crank, as he might have done (as the engineer would have stopped it on his signal), he passed in between the two cars, and attempted to raise the pin on the end of the other car—the one he had not attempted to raise by the crank. As I remember his testimony, he could not raise that pin with his hand—he did not succeed, at any rate—and then turned to the one he had attempted to raise with the crank, and he did raise that with his hand; but at that time his foot stepped in between the guard rail and the main rail, in a place which was not guarded by any blocking, and was caught. When he found he was caught, he threw his body out across the rail, and his leg was run over, and he suffered the very

severe injury which it is apparent he has sustained. Going in between the moving cars under those circumstances, where there were appliances for uncoupling them without going between them, was undoubtedly careless, unless it appears that they could not be uncoupled by the means provided for that purpose without going in between the cars. He attempted to uncouple with the crank on one side, and it does not appear that there was any defect in the coupling appliance for raising the pin which he attempted to use; and from the statement which he made to the claim agent, which has been read in evidence, which he does not contradict, it appears that the appliance was in order, and the probability is that he failed to raise the pin at the time, because it was held by the tightening of the slack, and, familiar as he was with that work, he should have observed that fact, and waited until the slack was loosened and in condition to raise the pin, or, it not appearing that there was any fault with the appliance on the other side, he should have used the other appliance. That certainly would have been the safer plan to pursue. Instead of that, he went between the cars, and attempted, with his hand, to raise the other pin, which could not be raised. But it does not follow that there was anything wrong with the appliance for raising it. The crank was on the other side, and the pin might have been held by the slack, the same as the other pin, which he first attempted, and did finally raise.

Now, the law in relation to this matter is well settled and very well understood. The trouble is that every case varies in its circumstances from every other case, and therefore it is not always easy, perhaps, to reconcile the differences in language found in some of the decisions upon questions of this kind, without careful consideration of the varying facts. One thing, however, is certain—that the decisions promulgated by the Circuit Court of Appeals of this circuit are authoritative and binding as far as this court is concerned. The case that was first cited—that of Morris against the railroad company, decided by our Circuit Court of Appeals, and reported in 108 Fed. 747, 47 C. C. A. 661—was very similar in its facts to the present case. In that case the person who was uncoupling the cars held the same position in respect to the work being done as did the plaintiff in this case. He had, I think, only one helper, however; but he had control of the engine, as in this case, and the engine moved upon his signal and stopped upon his signal. He was engaged, also, in distributing cars, and placing them in readiness to make up trains. He attempted to uncouple a car from the ones that were attached to the engine, as the plaintiff did in this case, by the appliance that was furnished to raise the pin, it being also an automatic coupler. But on taking hold of the crank he found that the chain which attached the rod to the pin, and by which the pin was raised, was broken, and it could not be so raised, and was not raised. Without stopping the train and going round to the other side to use the other crank, he went in between the moving cars to raise the pin on one of the cars with his hand. In that case there was a blocked guard rail, and, instead of his foot getting caught in the guard rail, it struck against the end of the blocking, threw him off his balance, and he was caught and injured. The decision of the Circuit Court of Appeals was that the fact of his having gone between

two moving cars to uncouple them, when there was a method of uncoupling them less hazardous, by going round to the other side and using the appliance which did not require him to go into that dangerous place, was a voluntary choice of the more dangerous method, and was an act of negligence which prevented him from recovering. That decision is binding upon me, and I am unable to draw a distinction between the facts in that case and in this. They seem to be exactly similar. While that case remains unassailed, I am obliged to follow it. I do not see that anything is left for me but to grant this motion and direct a verdict for the defendant.

Gentlemen of the jury, as the court views the law as it has been determined by the Circuit Court of Appeals in this circuit, the defendant is entitled to a verdict in this case, and I so direct you to find.