CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY *v.* THOMPSON.

Opinion delivered February 11, 1907.

1. MASTER AND SERVANT—RISK ASSUMED—UNBLOCKED FROGS.—An experienced brakeman who enters the service of a railroad company using unblocked frogs, a part of whose duties it is to switch cars, and who necessarily has opportunity to observe the condition of the switches, is deemed to have assumed the risk from the use of unblocked frogs. (Page 15.)

2. SAME—OBVIOUS RISKS.—The difference between blocked and unblocked frogs is so obvious to one engaged in switching trains that he is charged with notice of the kind in use upon the road. (Page 16.)

3. SAME—INSTRUCTION—ASSUMED RISK.—In an action against a railroad company for personal injuries sustained by the plaintiff, a brakeman, in the use of unblocked frogs, it was error to submit to the frog if it was shown that plaintiff assumed the risk of injury therefrom. (Page 17.)

4. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Where a brakeman was injured in attempting to couple two cars, it was not

error to refuse an instruction that if the jury found "that the coupling apparatus of one of the cars which plaintiff attempted to couple was defective, but that the apparatus on the other car was in good order, and that, by using the apparatus on that car, plaintiff could have made the coupling without putting himself in a place of danger, then it was his duty to make said coupling in a safe way, and his failure to do so would be contributory negligence;" it being a question for the jury to determine whether it was negligence on the part of the brakeman, called upon to act in an emergency, to go between cars to couple them together when one of them was defective. (Page 18.)

Appeal from Logan Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*E. B. Peirce* and *Buzbee & Hicks,* for appellant.

1.   The court erred in refusing to direct a verdict for defendant. The proximate cause of the injury was plaintiff's own contributory negligence. 108 Fed. 747; 128 *Id.* 529; 144 *Id.* 668; 70 Ark. 603; 51 *Id.* 467; 53 *Id.* 117; 54 *Id.* 389.

2.   It was error to refuse to allow defendant to introduce the application for employment by plaintiff.

3.   The court erred in admitting incompetent testimony on the part of plaintiff as to violation of rules. 1 Labatt, Master & Servant, p. 516; 20 Am. & Eng. Enc. Law, p. 106.

4.   There was error in the instructions given and refused, on the question of assumed risk by employees and contributory negligence. 54 Ark. 389; 35 *Id.* 613; 56 *Id.* 232; 48 *Id.* 333; 68 *Id.* 316; 58 *Id.* 125; 46 *Id.* 388; 57 *Id.* 76; *Ib.* 503; 58 *Id.* 324; 126 Fed. 485; 77 Ark. 367.

5.   There was no statute in Oklahoma abrogating the common law rule of fellow-servants, and under the common law car repairers, car inspectors and brakemen are fellow-servants. 46 Ark. 568; 51 *Id.* 479; 54 *Id.* 293; 61 *Id.* 306; 67 *Id.* 306.

6.   The closing argument of plaintiff's counsel was prejudicial. 74 Ark. 256; 74 *do.* 298.

*Randell & Wood* and *Wilkins, Beaty & Vinson,* for appellee.

1.   Plaintiff not barred by contributory negligence, even if he chose the more dangerous way of making the coupling. 1 Labatt, Master & Servant, p. 842. The test is whether he *knew* the way selected to be dangerous, or the danger was appar-

ent and obvious and the other method was safe.  100 Ala. 451; 14 So. 287; 99 Ala. 346; 4 Thompson on Negligence, § 4726.

2.  The evidence shows habitual disregard of the rule of the company, and knowledge and acquiescence of appellant is ·inferable from the universality and notoriety of the custom.  1 Labatt, Master & Servant, 516.

3.  There is no evidence that plaintiff knew that the frogs were unblocked, or that he comprehended or ought to have comprehended the danger.  92 S. W. 245.

4.  The defendant was bound to furnish a reasonably safe place to work, and reasonably safe tools and appliances, etc., and the question of assumed risk and contributory negligence is for the jury, the burden being on the defendant.  47 S. W. 311; 43 Ark. 129; 54 *Id.* 389; 48 *Id.* 333; 33 S. W. 334; 50 S. W. 417.

5.  Testimony as to the violation of the rules was admissible.  1 Labatt, Master & Servant, 516; 51 S. W. 580; 56 *Id.* 654; 50 Fed. 718.

6.  No error in the court's charge.  48 Ark. 348; 4 Thompson on Negligence, p. 1063; 54 S. W. 869; 129 Mass. 268; 3 Elliott on Railroads, § 1278; 92 S. W. 245; 95 *Id.* 168.

McCULLOCH, J.  The plaintiff, H. J. Thompson, was employed as brakeman by the defendant, Choctaw, Oklahoma & Gulf Railroad Company, and instituted this action in the circuit court of Logan County to recover damages for injuries received while at work coupling cars for defendant in its yards at Oklahoma City in Oklahoma Territory.  His leg was run over and mashed, so that it became necessary to amputate it below the knee, and the jury returned a verdict in his favor, assessing his damages in the sum of six thousand dollars.  His train (a work train) was made up in the yard for a trip, and he was directed by the conductor to bring the engine out of the round house and couple it to the train.  He proceeded to do this, and signalled the engineer to back up so as to couple the rear car to the front car of the main part of the train standing on the main track.  He started back to the train for the purpose of opening the knuckle of the coupling on the end of the front car, when he was overtaken, in about twelve or fourteen feet of the front car, by the end of the car attached to the backing engine, and he reached for the lever controlling the coupling on the moving car, but found

there was no lever, and jumped in between the car to make the coupling. What occurred then can best be described in his own language as follows:

"I had to make two or three attempts to get this knuckle open. It was an old-fashioned Janey coupler, and when I got it open we were near to the car. The pin had to be held up to make the coupling. If I had dropped it, it would have struck the other knuckle, and closed and locked it. I had to hold this pin to make this coupling, and in doing so I caught my foot in an open frog."

Before he could extricate his foot the wheels struck it. There was a lever on the standing car on the side across the track which could have been used in making the coupling, but plaintiff would have had to cross the track to reach it, and he testified that he could not have done so before the moving cars came against the other.

The evidence, which on this subject is undisputed, establishes the fact that on appellant's road the frogs were all unblocked, and that while on some railroads the frogs were blocked, it was rarely ever done. The plaintiff testified that he had never examined to see whether the frogs on appellant's road were kept blocked; that he was familiar with the switches, but never noticed whether or not the frogs were blocked. He had been working on appellant's road as brakeman for three months when the injury occurred—had been in railroad service about three years, of which time he had been brakeman about ten months.

Negligence on the part of the defendant is alleged in failing to provide a lever on the car for use in coupling and in failing to have blocked the frog where plaintiff was injured.

The defendant asked the court to give an instruction to the jury telling them not to consider the alleged negligence of the defendant in failing to block the frog. The court refused to so instruct, but gave instructions submitting to the jury for their determination whether the defendant was guilty of negligence in failing to have the frog blocked, and whether or not the plaintiff had, under the circumstances, assumed the risk of danger from the use of unblocked frogs. Appellant assigns error of the court in this respect, and contends that, according to the undisputed testimony, the plaintiff should be held to have assumed the risk

of such damages, and that the question should not have been submitted to the jury. It should be noted in the outset that there is no allegation of negligence on the part of defendant in failing to give warning or instruction to the plaintiff of the dangers of the service. Nor does the proof sustain such a charge. The plaintiff was at the time he entered the service of defendant company a full-grown man of experience in the work in which he was about to engage. So there is in this case no element of inexperience on his part, or of the duty on the part of the defendant to warn or instruct him as to his work or the dangers incident thereto. We have the sole question whether a brakeman of experience who enters the service of a railroad company using unblocked frogs, a part of whose duties it is to switch cars, and who has necessarily an opportunity to observe the condition of the switches, is deemed to have assumed the risk of whatever danger there is from the use of unblocked frogs.

In the case of *Davis* v. *Railway*, 53 Ark. 117, where suit was brought to recover damages on account of the death of a youth of limited experience in railroad work while engaged in coupling cars, Chief Justice COCKRILL, speaking for the court, said:

"The question for the jury's consideration was not whether the railway company was guilty of negligence in failing to block the space between the main and guard rails; because, even if the failure to do that could, upon the evidence adduced, be found to constitute negligence (as to which see *Chicago, R. I. & P. Ry. Co.* v. *Lonergan*, 118 Ill. 45; *Rush* v. *Mo. Pac. Railway*, 28 Am. & Eng. R. Cas. 488, and note; *Mayes* v. *Chicago, R. I. & P. Railway*, 63 Iowa, 562; *Huhn* v. *Mo. Pac. Railway*, 31 Am. & Eng. R. Cas. 221), the proof shows that the deceased continued in the service after he knew, or, what is the same thing, had full opportunity to know, that the rails were unblocked." And in *Railway Co.* v. *Davis*, 54 Ark. 389, the court, following the rule in the case just cited, held that an employee who took service with the railway company using unblocked frogs assumed the risk of the danger incident thereto, and could not recover by reason of the failure of the company to block the frogs. In disposing of the question the court said:

"The plaintiff charges negligence in the use of unblocked frogs, not because they were badly constructed, out of repair, or

exposed operatives to latent dangers, but because a different kind of frog would have been less dangerous to operatives.  Unblocked frogs were in universal use on the roads in this State, including the entire road of the defendant.  The injured employee knew, when he entered the defendant's service, that its frogs were unblocked; and if there was danger in their use, he knew it was an incident to the service he was entering.  When a master employs a servant to do a particular work with a particular kind of implement or machine, he agrees that they are sound and fit for the purpose intended, so far as ordinary care and prudence can discover, but does not agree that they are free from danger in their use.  The servant agrees to use in the service the particular kind of implement or machine; and if under such circumstances harm comes to him, it must be ranked among the risks he assumed when he entered the service."

It is argued, however, that the evidence in the case at bar does not show that the plaintiff, either when he took service or at the time he was injured, knew that unblocked frogs were in use on defendant's road.  It is sufficient to say in reply to this that the difference between blocked and unblocked frogs is, to one engaged in switching trains, so obvious that he is charged with notice of the kind in use.  *Davis* v. *Railway,* 53 Ark. 117.

"A servant is not required to inspect the appliances of the business in which he is employed, to see whether or not there are latent defects that render their use more than ordinarily hazardous, but is only required to take notice of such defects or hazards as are obvious to the senses.  The fact that he might have known of defects, or that he had the means and opportunity of knowing of them, will not preclude him from a recovery unless he did in fact know of them, or in the exercise of ordinary care ought to have known of them."  *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333.  This court has often held that an employee is bound to take notice of obvious defects in the place in which or instrumentalities with which he is put to work.  *Fordyce* v. *Edwards,* 60 Ark. 438; *Fordyce* v. *Edwards,* 65 Ark. 98.  In the recent cases of *Choctaw, Oklahoma & Gulf R. Co.* v. *Jones,* 77 Ark. 367, we said: "In the application of the doctrine of assumption of risks a distinction must be also made between those cases where the injury is due to one of the ordinary

risks of the service, and where it is due to some altered condition of the service, caused by the negligence of the master. The servant is presumed to know the ordinary risks. It is his duty to inform himself of them; and if he negligently fails to do so, he will still be held to have assumed them." To the same effect see *Southern Cotton Oil Co.* v. *Spotts.* 77 Ark. 458. 1 Labatt, Master & Servant, § § 388, 404; Dresser on Employers' Liability, § § 92, 95; *Indianapolis, B. & W. R. Co.* v. *Flanigan,* 77 Ill. 365; *O'Neil* v. *Keyes,* 168 Mass. 517; *Rooney* v. *Sewall & Day Cordage Co.,* 161 Mass. 153; *Fuller* v. *Lake Shore & M. S. R. Co.,* 108 Mich. 690; *Ragon* v. *Toledo, Ann Arbor & North M. Railway Co.,* 97 Mich. 265; *Mayes* v. *C., R. I. & Pac. Ry. Co.,* 63 Iowa, 562; *Davidson* v. *Cornell,* 132 N. Y. 228. The Supreme Court of Massachusetts in discussing this subject said: "When the plaintiff entered the defendant's service, he impliedly agreed to assume all of the obvious risks of the business, including the risk of injury from the kind of machinery then openly used. It is not material whether he examined the machinery before making the contract or not. He could look at it if he chose, or he could say: 'I do not care to examine it. I will agree to work in this mill, and I am willing to take any risk in regard to that.' In either case he would be held to contract with reference to the arrangement and kind of machinery then regularly in use by the employer, so far as these things were open and obvious, so that they could readily be ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and perils of the service in which he was about to engage." *Rooney* v. *Sewall & Day Cordage Co., supra.*

We are therefore of the opinion that the court erred in submitting to the jury the question of negligence on the part of the defendant in failing to block the frog. Under the facts established by the undisputed evidence the plaintiff is deemed to have assumed the risk of that danger. As the case must be tried again, we deem it proper to pass upon other questions raised and which will arise again in the next trial.

There was evidence to sustain the charge of negligence of the defendant in allowing the appliances for coupling cars to get out of repair, and it was a question for the jury to determine from all the proof whether or not the plaintiff assumed the risk

by going between the cars to make the coupling after discovering the absence of the lever on the moving car. The instructions of the court on this branch of the case were, we think, correct.

Appellant assigns error of the court in refusing to give the following instructions and others of like import:

"If you find that the coupling apparatus of one of the cars which plaintiff attempted to couple was defective, but that the apparatus on the other car was in good order, and that, by using the apparatus on that car, plaintiff could have made the coupling without putting himself in a place of danger, then it was his duty to make said coupling in a safe way, and his failure to do so would be contributory negligence, which would bar his recovery in this case."

The instruction was properly refused. It can not be said, as a matter of law under the circumstances of this case, that the plaintiff was guilty of contributory negligence in attempting to use the defective apparatus on the moving car, instead of crossing the track or stopping the train and using the apparatus on the other car. This was a question for the jury, and not one of law to be determined by the court. That the plaintiff attempted to make the coupling with the defective apparatus, instead of abandoning the effort or crossing the track and using the lever on the other car, was a fact for the consideration of the jury; but it can not be said as a matter of law that by so doing he assumed the risk or was guilty of contributory negligence. When he discovered the absence of a lever on the moving car, he was confronted by an emergency which suddenly called for the exercise of his judgment; and before he can be said to have assumed the risk it must be found that he was aware of and appreciated the danger, and before he can be held guilty of contributory negligence it must appear that the danger was so obvious that a person of ordinary prudence and care would not have attempted to make the coupling in the way he did. *Choctaw, O. & G. Rd. Co. v. Jones*, 77 Ark. 367; *Southern Cotton Oil Co. v. Spotts*, 77 Ark. 458. It must be remembered that when plaintiff discovered the absence of the lever the cars were about twelve feet apart, and he had only a moment in which to choose what course to pursue. It was his duty to couple the cars together in accordance with the orders just given him by his superior. If he saw

the lever on the other car, he necessarily had to act hastily in determining whether to go between the cars to make the coupling, cross the track between the cars so as to reach the lever on the other car, or let the cars come together without coupling. It is not negligence *per se* for a brakeman to go in between moving cars in order to couple them together. It is often necessary to do so. Whether it was negligence to do so under the circumstances shown in this case was a question to be determined by the jury.

In *St. Louis, I. M. & S. Ry. Co.* v. *Higgins,* 53 Ark. 458, in discussing the question of contributory negligence of a brakeman while coupling a car, the court said: "But, in determining whether he has failed to exercise due care in exposing himself to danger, it is always necessary to take into consideration the exigencies and circumstances under which he acted. If the service which he undertook to perform was required by a superior, and was such as to demand his exclusive attention, and that he should act with rapidity and promptness, it would be unreasonable to require of him that care, thought and scrutiny which might be exacted when there is time for observation and deliberation. In emergencies, when such attention, rapidity and promptness are demanded, it could hardly be expected that he would always call to mind previous information or knowledge that, if at the moment remembered, would have caused him to avoid the danger from which his injuries resulted. Under such circumstances the question of his due care would depend, to some extent, upon the view the jury might take of the necessity for immediate action and the time he had for reflection or thought." *Choctaw, O & G. R. Co.* v. *Craig,* 79 Ark. 53; 1 Labatt, Master & Servant, § 333; *Tennessee Coal, Iron & Ry. Co.* v. *Herndon,* 100 Ala. 451; *Alabama G. S. Co.* v. *Richie,* 99 Ala. 346.

Counsel for appellant have cited in their brief cases holding to the contrary; but we are convinced that the rule we have announced is the correct one, and is sustained by the weight of authority.

Error is also assigned in the rulings of the court in admitting testimony concerning violation of the rules of the company by brakemen in coupling cars; but inasmuch as that question is fully discussed in the recent case of *St. Louis, I. M. & S. Ry. Co.* v.

*Caraway,* 77 Ark. 405, which will serve as a guide to the court when the case is tried again, we do not deem it necessary to enter upon another discussion of the question.

For the error indicated the judgment is reversed, and the cause remanded for a new trial.