KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* HENRIE.

## Opinion delivered July 6, 1908.

1. PARTIES—ACTION FOR DEATH LOSS.—In an action for the benefit of the widow and next of kin to recover damages for negligence resulting in death, where there is no personal representative of the decedent, all the heirs at law who could take as distributees must be joined with the widow. (Page 446.)

2. ADMINISTRATION—MEANING OF TERM.—Testimony of a witness that there was no administration upon decedent's estate, in the absence of any evidence to the contrary, will justify a finding that there was neither an executor nor an administrator of the estate. (Page 448.)

3. MASTER AND SERVANT—DEFECTIVE APPLIANCE.—Testimony that deceased, who was conductor of a work train, attempted in an emergency to couple two cars, that when he went between the cars their drawheads passed each other, so as to permit the ends of the cars to crush him, that the ends of the drawheads were rotten, and that the drawheads could not have passed each other if properly constructed and in good repair, was sufficient to sustain a finding that the railroad company was negligent. (Page 448.)

4. EVIDENCE—EXPERT TESTIMONY.—It was not error to permit a witness who had qualified himself as an expert witness to testify that if drawheads are properly constructed and in good repair they will not pass each other. (Page 452.)

5. WITNESS—DISCRETION AS TO RECALLING.—It is within the trial court's discretion to permit a witness to be recalled in rebuttal to testify concerning matters which are not properly rebutting testimony. (Page 452.)

6. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—It was not error, in a suit for the killing of a brakeman while coupling cars, to refuse to instruct the jury that plaintiffs cannot recover if their decedent could have made the coupling of the cars without going between them, and if it was dangerous to go between them, as such instruction would make the servant the insurer of his own safety. (Page 453.)

7. DAMAGES—MEASURE OF—INSTRUCTION.—A general instruction that if the jury found for the plaintiffs they should assess the damages at such a sum as they may deem a fair and just compensation with reference to the pecuniary injuries resulting to the plaintiffs from the death of decedent as shown by the evidence was not erroneous in failing to say that the rate of wages of deceased should be considered, that his personal expenses should be deducted from his gross earnings, and that his power to earn money might be diminished with increasing age; if defendant desired a more specific instruction, he should have asked it. (Page 454.)

8. SAME—EXCESSIVENESS—REMITTITUR.—The deceased had a life expectancy of 31 years, was robust, healthy and intelligent, was contrib-

uting $1500 annually to his family, was sober, industrious, kind and affectionate and greatly interested in the education and training of his children. *Held* that an award of· $32,500 is excessive, but that the judgment will be affirmed upon a remittitur of everything in excess of $25,000. (Page 455.)

9. APPEAL—REHEARING—NEW QUESTION.—A losing appellant cannot on rehearing insist that the court should have directed a verdict in its favor if no such contention was made on the original hearing. (Page 456.)

10. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.—*It seems* that if safety appliances are provided on railway cars so that the cars may be coupled from the outside without going between the cars, and if a brakeman disregards these appliances provided for his safety and needlessly goes between the cars to make the coupling, he is, as matter of law, guilty of contributory negligence, and is held to have assumed the risk of the increased danger. (Page 457.)

11. SAME—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—Where safety coupling appliances have not been provided, or where those provided have become out of repair, and it becomes necessary to couple without them, it is a question for the jury, under the particular circumstances of each case, to determine whether a brakeman who went between cars to couple them was guilty of negligence in so doing. (Page 457.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed, with remittitur.

### STATEMENT BY THE COURT.

G. W. Henrie, who was employed by the Kansas City Southern Railway Company as conductor on a work train, was killed on November 6, 1905, while attempting to couple cars in his train at Horatio, Arkansas, and his widow, Ollie M. Henrie, and his three infant children instituted this action in the circuit court of Miller County to recover damages alleged to have been sustained on account of his death.

The damages are laid at the sum of $50,000, and on a trial of the case the jury returned a verdict in favor of the plaintiffs, assessing damages in the sum of $32,500.

Negligence of the company is charged in permitting the drawheads of the cars to become rotten and defective, so that when Henrie went in between the cars to adjust the coupling the drawheads passed each other and allowed the two cars to come together and catch him and crush him to death instantly. It is also alleged in the complaint that the plaintiffs are the widow

and only heirs at law of said decedent, and that no administrator of his estate had ever been appointed.

The defendant filed its answer, denying all the allegations of the complaint.

The material facts established by the testimony are discussed in the opinion of the court.

*S. W. Moore* and *Read & McDonough,* for appellant; *C. B. Moore,* of counsel.

1. There is no proof that deceased did not have other children and heirs at law.   79 Ark. 62; Kirby's Digest, § 6290; 39 Ill. 495;  7 Bush, 50; 12 N. H. 470; 75 Md. 376; also Kirby's Digest, § § 2636, 2638, 2640, 2647, 2658-9.

2. There is no proof that there was no personal representative.   Kirby's Digest, § § 54, 55, 6290, 7808; 29 Ark. 418; 16 Me. 257; 57 Mo. 603; 9 S. W. 540; 3 Dill. 124; 102 S. W. 700; 76 Ark. 377; 11 S. E. 891; 44 Ark. 499.   Letters of administration are not the same as letters testamentary.   Kirby's Digest, § § 1 to 14, 20 to 34, 35 to 37, 54-5, 70.

3. There is no evidence to show that proper inspection by the company would have discovered the defect if any.   The burden was on plaintiff to show that the coupling was defective, that it was unknown to deceased that the defect caused the injury, and that defendant knew of the defect or could have known it in the exercise of reasonable care.   82 Ark. 372; 74 *Id.* 19; 83 Ark. 318; 79 Ark. 437.

4. The testimony of the two negroes is against the physical facts.   79 Ark. 608.

5. It was error to refuse to permit witness Preble to say whether or not the place was dangerous.   114 Ala. 519.

6. If the testimony of Gibson was admissible at all, no foundation was laid.   24 Ark. 251; 57 *Id.* 387; 55 *Id.* 128; 2 Elliott on Ev., § § 1041-2; 64 Ark. 523.   He was not an expert.

7. It was error to give instructions 1 and 2.   77 Ark. 567; 76 *Id.* 333.   One is abstract; the other not applicable to the facts.   74 Ark. 437; 77 *Id.* 567; 75 *Id.* 260; 74 *Id.* 19; 63 *Id.* 593; 77 *Id.* 128.

8. Measure of damages is not properly defined.   Sutherland on Dam., § 1267; 60 Ark. 558.

9. It was extremely dangerous to go between the cars, especially on a curve. If deceased disregarded the danger, he assumed the risk. 68 Ark. 316; 77 *Id.* 367, 290; 81 *Id.* 345.

10. Verdict clearly excessive.

*N. B. Morris, Weeks & Whitley,* and *W. H. Arnold,* for appellee.

1. The question of improper parties cannot be raised here for the first time. The proof shows the only heirs and no administration. A defect of parties is waived by failure to object. 44 N. Y. S. 28; 14 App. Div. 595. Misjoinder cannot be first urged on appeal. 37 Atl. 830; 182 Pa. St. 131; 24 S. E. 422; 43 Pac. 328; 13 Wash. 502; 68 N. E. 443; 204 Ill. 540.

2. While in name there is a difference between administrator and executor, in fact and in law they are the same. 1 Words & Phrases, 199; 62 Md. 560.

3. Whether the cars were defective or not, and whether the defect was known or could have been by proper inspection, was a fact for the jury. 79 Ark. 437; 82 *Id.* 372.

4. There was no error in instructions 1 and 2. They do not make the company the insurer of the life of deceased, but put on it the duty of exercising ordinary care to furnish reasonably safe appliances with which to work. That is the law. If not full or clear enough, defendant should have asked special charges. 48 Ark. 333; 56 *Id.* 210, 237.

5. In charging the jury as to the measure of damages the court followed the statute and the Sweet case. 63 Ark. 563.

6. The exceptions to instructions were general 83 Ark. 61; 75 *Id.* 76; 56 *Id.* 602; 69 *Id.* 637; 82 *Id.* 391; 73 *Id.* 594; 81 *Id.* 190.

7. No error in instructions objected to, nor in refusal to charge. 77 Ark. 367; 92 S. W. 244.

8. Verdict not excessive. No limit to recovery for death. Const. art 5, § 32. It is matter for the sound discretion of the jury on the evidence. 104 S. W. 913; 107 *Id.* 374.

9. It is not negligence nor contributory negligence *per se* to go between cars to make a coupling. It is for the jury. 82 Ark. 11; 79 *Id.* 53; 53 *Id.* 458; 77 *Id.* 367; *Ib.* 458; 138 Ala. 487.

McCULLOCH, J., (after stating the facts.) 1. It is contended, in the first place, that the testimony fails to show that ap-

pellees were the only children and heirs at law of the decedent, or that there was no personal representative of his estate.

The statutes of this State provide that an action for damages caused by the wrongful act, neglect or default of another "shall be brought by and in the name of the personal representative of such deceased person, and if there be no personal representative, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate." Kirby's Digest, § 6290.

Where there is no personal representative of the decedent, all the heirs at law who could take as distributees of the estate under the laws of descent must be joined in the action. *McBride* v. *Berman,* 79 Ark. 62.

The only testimony bearing on these points was that of Mrs. Henrie, and is as follows:

"Q.   When did you and Mr. Henrie marry?

"A.   In 1893.  At Sealy, Texas.

    *   *   *   *   *   *   *   *   *

"Q.   Did you and he have any children?

"A.   Yes, sir.

"Q.   How many children did you have?

"A.   Three.

"Q.   What were the names and ages of these children?

"A.   The oldest is Vivian.  She is 13, and George Whitfield Henrie is 11 now, and Ollie Marie Henrie is 7.

"Q.   All of them live with you, and they are all the children of yourself and your deceased husband?

"A.   Yes, sir.

"Q.   Those are the only children you and Mr. Henrie have?

"A.   Yes, sir.

    *   *   *   *   *   *   *   *   *

"Q.   There is no administration pending on his estate?

"A.   No, sir.

"Q.   No guardianship or administration pending?

"A.   No, sir."

She also testified in detail concerning his care and treatment of the children, and stated that he contributed nearly all his earning to the support of the family. She was not cross-examined on this subject.

It is argued that the proof does not negative the fact that Henrie died testate, and that there was an executor of his estate, nor that he may have married and had living issue of that marriage prior to his intermarriage with appellee, Mrs. Henrie.

This is, we think, a strained construction of the testimony. True, it does not expressly negative these facts, but it does so by fair implication. The use of the word "administration," as applied to estates of deceased persons in its common and popular acceptation, is sufficiently comprehensive to cover the meaning of an executorship. It is so defined by the lexicographers.

Webster: "Administration; (a) The management and disposal, under legal authority, of the estates of an intestate, or of a testator having no competent executor. (b) The management of an estate of a deceased person by an executor, the strictly corresponding term execution not being in use."

Our statute treats of executors as well as administrators in a chapter under the general subject of administration. The law writers on the subject treat it in the same way. See, also, In re *Murphy,* 39 N. E. 691; *Crow* v. *Hubbard,* 62 Md. 560.

Nor does the testimony leave room for an inference that there may have previously been administration on the estate. The testimony of Mrs. Henrie leads fairly and irresistibly to the conclusion that the children named were all that her husband had. She testified concerning their marriage and the names and ages of all their children, and it can scarcely be inferred that there had been another marriage and set of children born when the record is entirely silent on the subject. It is fairly to be presumed that, if there had been children of a former marriage, Mrs. Henrie knew of it. Appellant did not, by asking an instruction on the subject, treat the question as an issue in the case. Aside from a formal denial in the answer of the allegations of the complaint concerning administration and next of kin, appellant does not appear to have insisted on the question until the case reached this court.

2. Do the facts established by the evidence sustain the verdict as to negligence?

Deceased was at the time of his death a conductor in charge of a work train, and was engaged in hauling gravel for ballast from Horatio, Arkansas. The cars of his train had been loaded, and some of them were standing on a curved "Y" track. Other cars were attached to the engine. Orders were received to move the train south to another station in time to meet a north-bound passenger train, and it became necessary to couple together the cars hurriedly as the time for meeting the other train was very short. He went to the end of the cars on the "Y" and signalled the engineer to back up so that these cars would be coupled into the train.

Willis Martin, a witness introduced by appellees, testified that he was present and saw the injury inflicted. He said that Henrie went between the ends of the standing and approaching cars to adjust the couplers, that the cars came together the first time without coupling and without accident, but that a second attempt was made to couple them, and as they came together the drawheads passed each other so as to permit the ends of the cars to come together close enough to catch Henrie and crush him. He also testified that immediately after the accident the wood or timber supporting the drawhead was found to be rotten. He said: "You could mash it this way (indicating), and it would crush." He said a drummer standing by pulled a piece of rotten wood from around or next to the drawhead with his hand. The timbers next to the iron draw-heads are explained by one of appellant's witnesses to be draft timbers or middle sills which run through the center of a car from end to end and lie on either side of the couplers and hold them in place. The ends of these timbers were manifestly what the witness Martin referred to when he said that the drummer pulled out a piece of rotten wood.

George Hawkins, another witness introduced by appellee, testified that he was present and saw the accident, that the cars failed to couple on the first attempt, and that when Mr. Henrie went in between them the second time the drawheads passed each other, allowing the cars to come close enough together to crush him. He also stated that the timber around the drawhead was rotten, and that a bystander, immediately after the accident, pulled out with his hand a portion of the decayed wood.

These were the only eye-witnesses who testified in the case.

except the engineer and fireman, who did not pretend to know all the details of the accident.

It is shown by the testimony of another witness that the drawheads could not have passed each other if they had been properly constructed and were in good repair.

One of appellant's employees whose duty it was to inspect cars at Horatio testified that he inspected the cars in question the morning before the accident and also in the afternoon after the accident and next day and found them at each inspection to be in good condition and without defects. He testified that there were running boards on the end of each car which, when two cars came as close together as the couplers would permit, would leave only a clear space of six inches. He and several other witnesses testified that tests of these two cars between which Henrie was injured were made on the curved "Y" track where the injury occurred, and that the result of the tests showed that when the cars came together on the curve (the couplers meeting without passing) the running boards came together close enough to catch and hold a two-inch board.

These tests, if correct, demonstrated the fact that with the couplers coming together properly there was not sufficient clear space between the running boards to accommodate a man's body. There was also testimony tending to show that after the accident blood was found on the running boards.

It will be seen, therefore, that the theory of appellees is that Henrie went between the cars to adjust the defective couplers, or those at least which had failed to couple, and was caught between the ends of the cars by reason of the defective drawheads passing each other; whilst the theory of appellant is that the couplers were not defective, but that Henrie went in between cars having these running boards, which would come close together and were obviously dangerous, and that his death was caused by his own negligence. These two theories are necessarily conflicting, and cannot both be correct. The testimony tending to support them, respectively, is also conflicting, and the jury, of course, must have rejected appellant's testimony. If the testimony of the two eye-witnesses introduced by appellees be true, it could not be true that the running boards came together on the curved track without the drawheads having passed each other,

for these witnesses say that Henrie went in between the cars the first time in safety as they came together. They say he was in between the cars when they came together the first time and failed to couple, and that he came out unhurt. There are other sharp conflicts in the testimony which it became necessary for the jury to consider, and which they have settled by the verdict. If they accepted as correct the theory of appellees, and found the testimony introduced by appellees to be true, the verdict was correct. The evidence sustained it.

It is argued by learned counsel for appellant with much zeal that the tests made by the witnesses established certain physical facts, to which the statements of appellee's witnesses must yield.

The weakness of this contention is that the existence of the alleged physical facts is in dispute and depends upon the testimony of other witnesses whose statements of the facts are in conflict with appellees' witnesses.

This conflict raised a question of credibility which it was the province of the jury to settle in determining what the physical as well as all other facts were.

We think the proof was sufficient to establish the fact that there was a defect in the drawhead which permitted the ends of the two cars to come together. Two witnesses testify that some of the timbers which supported the drawhead was rotten, and that the two drawheads passed each other. Another witness who proved himself qualified to testify on the subject testified that if the drawheads were properly constructed and were in good condition of repair they could not pass each other, even on a curved track. If these statements were true, then the jury, under the circumstances, were warranted in finding that the defect was a discoverable one, and that appellant was guilty of negligence in failing to inspect and discover it. *St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372.

Appellant relies upon the case of *St. Louis, I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437, as sustaining their contention that there was no discoverable defect. That case does not, however, sustain the contention. There the plaintiff sued for an injury caused by the breaking of a ladder, and in the opinion of the court it was said: "There is no evidence at all that the ladder had any appearance of being defective. On the contrary, the un-

disputed evidence established the fact that the timbers were perfectly sound, and that the break at the place where the round parted from the mitre-joint in the side beam was a fresh split.  *  *  *
The case is quite unlike one where defects are found after the injury caused thereby which must have been discovered if a careful inspection has been made.   In such a case the jury would be warranted in finding either that no inspection was made, or that no effort was made to repair the defect after discovering it; but in the case before us the evidence does not show such a defect as must have been discovered in advance of the injury on a reasonably careful inspection."

In the present case the defect which is proved to have existed in the drawheads at the time of the injury was such as could have been discovered in advance.   Therefore the jury was warranted in concluding either that there was no inspection or no steps taken to repair the defect after discovering it.   In this respect the case is like the Wells case, *supra.*

3.   Error of the court is assigned in permitting witness Gibson to testify to the effect that if the drawheads had been properly constructed and in good state of repair they would not have passed each other.   It is argued that that was wholly a question for the jury to determine, and was not proper subject for expert opinion.   The witness proved himself to be fully qualified to testify on the subject.   The question could not have been properly answered except by one possessing knowledge and skill, therefore it was proper to admit as evidence the opinion of one who possessed such special knowledge.   *Railway Company* v. *Lyman,* 57 Ark. 512; *St. Louis, I. M. & S. Ry. Co.* v. *Dawson,* 77 Ark. 434.

Complaint is also made because the court permitted witness Gibson to be recalled in rebuttal to testify concerning matters which were not properly rebuttal testimony.   This was a matter in the sound discretion of the court, and no abuse of discretion is shown.

4.   The next error assigned is in the court's refusal to permit witness Preble to testify that it was dangerous for Henrie to go between the cars.   The witness was in fact permitted in other parts of his testimony to state his opinion fully on this subject, so no prejudice resulted.   We need not decide whether or not the testimony was admissible.

5.   Appellant requested the court to give, among other things, the following instructions, which were refused, and error is assigned in so doing:

"7.   If the deceased could have made the coupling without going between the moving cars, and if it was dangerous to go between the moving cars, and if the deceased did go between the moving cars into a dangerous place, and if that contributed to his injury, the plaintiffs cannot recover."

"7a.   If the deceased could have made the coupling without going between the moving cars, and if it was dangerous to go between the moving cars, and if the deceased did go between the moving cars into a dangerous place, and if these or either of them contributed to his injury, the plaintiffs cannot recover."

These instructions were properly refused. The court gave other instructions telling the jury that if deceased was guilty of negligence which contributed to his injury in going into a dangerous place to couple cars the plaintiffs could not recover  In other instructions the court defined the terms negligence and ordinary care, and also instructed that deceased was bound to take notice of patent or obvious defects in the appliance used, and that if he failed to do so, and his death was due to such failure, the plaintiffs could not recover. This was sufficient. The refused instructions make the servant the insurer of his own safety and absolutely prevent a recovery if the place turns out to be dangerous. This is not the law. *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11.   It is a matter of common knowledge that it is more or less dangerous to go between cars in a moving train or trains about to be put in motion, yet it is not negligence *per se* for a trainman, accustomed to that work, to go between cars to couple them. That is a question for the determination of a jury under the circumstances of each case.

The testimony in this case shows that the coupler on the cars did not work satisfactorily. Of course, if the position of the running boards on the ends of the cars was as stated by appellant's witnesses, that would have been an obvious danger which deceased was bound to take notice of and avoid; but the jury found against the theory that the running board came too close together to allow space enough for a man's body.

The court gave the following instruction over appellant's objection on the measure of damages:

"3.    Should you find for the plaintiffs in this case, then you will assess the damage at such sum as you shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from the death of said Geo. W. Henrie, to the plaintiffs in this case as may be shown by the evidence.    In estimating this loss it is proper for you to take into consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for and disposition to labor, his earning capacity, the care and attention, the instruction and training, one of his disposition and character may be expected to give to his children during their minority, as may be shown by the evidence."

The correctness of the instruction is challenged on the ground that it failed to say that the rate of wages received by deceased should be considered, or that his personal expenses should be deducted from his gross earnings, or that the power of deceased to earn money might be diminished with increasing age.

Appellant asked no instructions on the measure of damages, but contented itself with an objection to this instruction as a whole.    The instruction given did not necessarily exclude consideration of the subjects now suggested as proper by appellant, but, on the contrary, we think the general term employed in the instruction, fairly construed, excluded them.    If appellant desired anything more specific or definite, it should have made the request therefor.

The pecuniary loss of decedent's widow and children was the probable aggregate amount of his contributions to them, reduced to present value.

This court in *Railway Company* v. *Sweet,* 60 Ark. 558, in describing how this is to be determined, said:

"How is this compensation to be determined?    By taking into consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for and disposition to labor, and the probable increase or diminution of that ability with the lapse of time; deceased's earning power, rate of wages, and the care and attention with one of his disposition and character may be expected to give his family—all these are proper elements for the consideration of the jury in determining the value of the life taken.    From the amount thus ascertained, the personal expenses of the deceased should be deducted, and the bal-

ance, reduced to its present value, should be the amount of the verdict."

6. Was the assessment of damages excessive? Deceased was 35 years of age at the time of his death, and had a life expectancy of 31 years. He is described in the evidence to be a man of robust physique, healthy and intelligent, with about twelve years' experience in railroad work. He was earning about $175 per month at the time of his death. The proof does not show with satisfactory accuracy the amount contributed to the support of his family, but we think it was sufficient to sustain a finding of as much as $1,500 per annum contributed to his family— no more than that. He was sober and industrious, economical in his habits, kind and affectionate toward his wife and children and greatly interested in the proper education and training of his children. He had three children, aged, respectively, thirteen, eleven and seven years.

There is little ground in the evidence to warrant a conclusion that his earning capacity would have been very materially increased. He had been in railroad work as a conductor for twelve or thirteen years, and his earnings had increased very little.

Considering the pecuniary loss of the amount of decedent's probable contribution to his wife and children reduced to its present value, and the pecuniary value of the instruction, moral training, etc., to his children which might have been expected, we think the evidence does not warrant an assessment of more than $25,000 damage. It does warrant that amount, but the verdict is to that extent excessive.

There are numerous other assignments of error, but we find none of them well founded.

The case was fairly tried, and the evidence sustains the verdict except as to the amount of damages.

If appellees will, within fifteen days, remit the amount of damages down to $25,000, the judgment will stand affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial.

## ON REHEARING.

### Opinion delivered October 19, 1908.

McCULLOCH, J.  It is contended now for the first time in argument in this case that the undisputed evidence shows that the cars which Henrie attempted to couple together were supplied with automatic couplers as required by the terms of the Federal statute, and that his failure to use the coupling appliances from the outside, instead of going between the cars, constituted contributory negligence, and that, for this reason, a peremptory instruction should have been given to the jury to return a verdict for appellant.  The rules of this court forbid that the losing party may, on petition for rehearing, take advantage of a point which he failed to bring to the attention of the court on the original hearing.

It is true that the complaint contains an allegation, which is denied in the answer, to the effect that the automatic coupler was out of repair, so that it became necessary for Henrie to go between the cars to make the coupling; but that question does not appear to have been pressed in the trial by either party. There was evidence tending to show that the coupling appliances would not work, and that it was necessary for Henrie to go in between the cars to adjust the knuckle, and there was evidence adduced by appellant to the effect that the coupling appliances were found on inspection to be in good condition, but the controlling issue in the trial was whether or not the drawheads were defective, and whether or not the running boards on the ends of the cars came so close together that enough clear space was not left for a man's body.  The result of the trial turned principally on these issues, and it does not appear that a single witness was asked the direct question whether the automatic coupling appliances were in such condition that it was unnecessary for Henrie to go between the cars.  No instruction was asked by either party directly submitting that particular question to the jury.

The argument on the original hearing of the case here turned upon the same questions as to defects in the drawheads and condition of the running boards, and nowhere in appellant's

brief do we find a contention that the undisputed evidence showed the coupling appliances to be in perfect order, so that they could be operated from the outside. Therefore appellant is forbidden by the rules of the court to raise that question here now for the first time.

But, as already stated, we find that there was evidence sufficient to go to the jury and sustain a finding that the appliances could not be operated. The evidence tends to show that efforts to couple the cars both before and immediately after the accident were unsuccessful because the coupling would not work.

Error is assigned and now reargued on the refusal of the court to give the following instruction:

"9. If the jury believe from the evidence that there were two ways to make the coupling, one of which was less dangerous than the other, and deceased chose the most dangerous place or way and was killed, he was guilty of contributory negligence, and plaintiffs cannot recover."

The contention of counsel with respect to this instruction in their original brief was not overlooked, but the correctness of this instruction was not discussed in the opinion for the reason that we considered the discussion concerning other instructions to be applicable to this one. We still think that the purport of this instruction was the same as refused instructions numbers 7 and 7a, and that it was incorrect and properly refused for the reasons stated in the opinion.

An instruction to the same effect, substantially, was condemned in *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11. It was stated in the opinion in that case that authorities to the contrary were to be found, but that we considered them unsound and declined to follow them.

A request for an instruction telling the jury that if safety appliances were provided on the cars, so that the coupling could have been made from the outside without the necessity of going between the cars, and if the employee disregarded these appliances provided for his safety and needlessly went between the cars to make the coupling, he would, as a matter of law, be deemed guilty of contributory negligence and also held to have assumed the risk of the increased danger would present a different question for our consideration. The correctness of such

an instruction seems to be sustained by the authorities. *Morris v. Duluth, S. S. & A. Ry. Co.,* 108 Fed. 747; *Gilbert* v. *Burlington, C. R. & N. Ry. Co.,* 123 Fed. 832, s. c. 128 Fed. 529; *Suttle* v. *Choctaw, O. & G. R. Co.,* 144 Fed. 668; *Dawson* v. *Chicago, R. I. & P. Ry. Co,* 114 Fed. 870; *Tuttle* v. *Detroit, etc., Ry. Co.,* 122 U. S. 189; *Union Pac Rd. Co.* v. *Brady,* 161 Fed. 719. But no such instruction was asked in the present case. The instruction now under consideration might have been understood by the jury to mean that, even if the automatic coupling appliance on the car was so defective that it could not be operated from the outside, yet if Henrie made use of a way to couple the cars which turned out to be more dangerous than some other way which he might have chosen, he was guilty of negligence. They might have understood it to mean that, notwithstanding a defect in the appliance which prevented him from operating it with the lever on the outside, yet if some other way to adjust the knuckle and make the coupling could have been found without going between the cars, he would, as a matter of law, be deemed guilty of negligence. That is not the law. When safety coupling appliances have not been provided, or **where those provided** have got out of repair, and it becomes necessary to couple cars without them, it is always a question of fact for a jury to determine, under the particular circumstances of each case, whether an employee who went between cars to couple them was guilty of negligence in so doing. It is not correct to say, as a matter of law, after balancing the chances, that an employee was necessarily guilty of negligence because he selected a method of doing his work which turned out to be the more dangerous way. This, as we have already said, is to make the servant the insurer of his own safety, notwithstanding the fact that the master has failed to discharge his duty.

We have reconsidered all the other assignments of error in the case, and find no cause for changing the result announced in the former opinion. The evidence is not altogether satisfactory, either on the question of appellant's negligence or contributory negligence of deceased or as to the amount of damages, but we think it is sufficient to sustain a verdict for damages in the amount which we have allowed to stand, and we do

not feel justified in disturbing the verdict further than the re-mittitur of the amount already ordered.

The petition for rehearing is therefore denied.