St. Louis, Iron Mountain & Southern Railway Company

*v.* Funk.

Opinion delivered April 3, 1911.

Master and servant—contributory negligence—when question for jury.—Where plaintiff, a switch tender, in the performance of his duties and while standing in the middle of the track, signalled to the engineer of an approaching engine to slow up and pick him up, but the engineer negligently failed to obey such signal, and there was testimony that the plaintiff did not discover that the engineer had

disregarded the signal until the engine was so close as to frighten and confuse him, and he attempted to jump on the engine instead of jumping off the track, the question whether he was guilty of contributory negligence was for the jury.

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is a suit for damages for personal injuries resulting from appellee's having been thrown violently against the front of the engine upon attempting to mount the pilot thereof in the discharge of his duty.

Complaint alleged "that he was a switch tender in the union station yards in Little Rock, and it was his duty to care for switches, and keep them lined up for trains going in and out; that it was customary and a part of his duties to ride the engine from one part of the yard to the other; * * * that on the morning of the 10th of February * * * he was at the south end of the yards in Little Rock in the performance of his duty to receive train No. 4, and, it being necessary to go to the other end of the yards, as was his custom and duty, he being on the track in front of the engine of said train for the purpose of stepping upon the pilot of said engine to ride to the other end of the yards, * * * gave the engineer the signal to slow down and pick him up; that said engineer failed to obey said signal and slow down, as was his duty, and, said engine being too close for him to leave the track in safety when he discovered that the engineer had refused to obey his signal, * * * was caught by the pilot of said engine and was thrown against the drawhead of said engine with great force and violence, permanently injuring him internally, and rupturing him at the lower extremities of the bowels," etc.

Appellant answered the complaint, denying all the material allegations, and pleaded contributory negligence and assumed risks as affirmative defenses thereto.

The testimony tended to show that Willard Funk, appellee, was 21 years of age, living in Little Rock, Ark. He began work for the company first as train caller, and in July or August prior to the accident he was bridge watchman for trains, stationed at one end of the bridge over the Arkansas River, and sending

trains across the bridge upon signal from the other end that it was clear. That he worked as such watchman until December, when he was transferred to the yard as highball man, where his duties were to bring trains into the yards and see that passenger trains got in on the right track, line up switches, cut baggage car off, etc. On the morning of his injury, the El Dorado train went out south at 8:22, and train No. 4, northbound, came in at 8:25, appellee holding No. 4 south of the Rock Island crossing until the El Dorado train got out, when he would give signal to No. 4 to come in. It was his duty to ride this latter train up beyond the station, take off the engine, put on a new engine, line up all switches, and "give it a clear shoot for St. Louis." He had been acting as highball man for two months from 5:30 A. M. until 6:00 P. M. daily, and riding the pilot of engine on No. 4 all the time, as a rule riding it every other morning. Engineer Fitzgerald in charge never came through at over four or five miles an hour. Appellee would get out on the track where he could be seen, and the engineer had always slowed up. He stated that on the morning in question he was standing on the side of the track, and gave the usual signal, while the engineer was looking straight at him for about 200 yards. He gave the signal to both fireman and engineer, and continued until the engine came right on up to him. It got so close to him before he realized that it was going so fast that he did not know what to do. After he realized the engine was not going to stop, he was afraid to attempt to leave the track, lest the pilot beam should strike him or his foot slip, and concluded to jump the pilot and take the chances, which he did, and was thrown up, and his stomach came down on the bumper, and his wrist was sprained. Seeing that the engine was not going to stop, he jumped off or sort of rolled off, lighting on his feet, and then walked up in the yards. Formerly, the same engineer had run up rather close to him and then stopped his train suddenly, when he would step on and give him the highball, and the train would proceed. He knew it was dangerous to be in front of the moving train, but was not taking a chance if the engineer had slowed up as he generally did. That Fitzgerald, the engineer, was running between 12 and 15 miles an hour, and had his hand on the air brake at the end of the yard, when he was about 250 feet away,

and appellee gave him the signal and then walked over and gave it to the fireman. Appellee judged that he was coming 10 or 12 miles an hour, and could not tell how fast he was coming when he got closer—no one could—and was expecting the engineer to stop every minute; that he had been riding the same engine every day for two months, and rode on an average four or five a day. He watched this train all the time for 250 feet after he gave the slow-up signal, and it was not as far as 20 feet from him when he first discovered it was not going to slow down. Fitzgerald was not working steam before he reached appellee, but when appellee hit the engine he "pulled her open."

It is conceded that the testimony was sufficient to sustain the finding that it was the duty of appellee to mount or board the incoming engine as alleged. The fireman testified that Engineer Fitzgerald was in charge, and that appellee was known to them as "highball man" in the yards; and that this was his duty and habit to board the engine and ride it to the depot. Sometimes he would step on the pilot and sometimes in the gangway, the engineer reducing the speed; that appellee was standing out on the track with his arms extended, giving the signal to reduce speed, some 200 feet ahead of the train, which was approaching at the rate of 12 or 15 miles an hour, and the engineer should have reduced the speed sufficiently for him to have boarded the engine in safety; did not notice him doing anything to reduce the speed; that he could have seen appellee at least 100 feet ahead. He also testified that he could tell whether an approaching engine was coming fast or slow enough to board it, and any experienced man could; that a man standing as appellee was could have escaped from the engine when it was within 50 feet of him; that he never stood on a track until an engine ran within 50 feet of him, but believed he could stand on the track and tell whether the train got under 10 miles an hour at that distance.

The superintendent of the Arkansas Division testified that there was nothing more dangerous than for a man to attempt to step on pilot when moving, because there was just a chance whether he fell from one side or the other; that a man could tell whether an engine was coming fast or slow when it was within 50 feet of him; that any man could tell approximately the speed of an engine when it got within 100 feet of him, and his ability

to determine the speed increases as it comes nearer.. He could not see how any man could fail to know whether an engine was coming too fast for boarding, if he was looking at it.

A switchman standing 35 feet north of where Funk was injured saw the engine aproaching appellee standing near the middle of the track, giving a slow signal. The engine was running at such speed that witness with his experience would not have attempted to get on. Appellee fell over against the pilot beam, and thereafter dropped off and picked up his hat. Witness considered his mounting the engine a piece of foolishness, and also to appellee condemned vigorously the engineer for failing to obey slow signal. He said he could, and any other railroad man with experience could, tell, when standing in front of an approaching train, whether it was coming too fast to board, and that a train coming 15 miles an hour could, in his judgment, be avoided after it approached within 15 feet. Funk was standing at about the proper place. "Witness would have gotten off the track if he had been in his place. If he had slipped, that would have been a chance he would have taken."

The station master also testified that "if a man has any eyes, he can tell, when an engine is within 25 or 50 feet, whether it is approaching too rapidly for him to attempt to board it."

The court instructed the jury, and no objections to instructions given are urged or insisted upon here.

The jury returned a verdict for the plaintiff for $2,000, and defendant appealed.

*W. E. Hemingway* and *Lovick P. Miles,* for appellant.

1. The court should have directed a verdict for defendant. There were two ways to board the train, one practically safe, the other exceedingly dangerous. He was guilty of negligence in selecting the latter. 86 Ark. 65; 90 *Id.* 543; 1 White on Personal Injuries, § 400.

2. The doctrine *"res ipsa loquitur"* precludes a recovery. 90 Ark. 387.

*Jeff Davis* and *Frank Pace,* for appellee.

The question of negligence was settled by the jury on proper instructions. It was not contributory negligence to fail to select the place of greatest safety to board the train. 81 Ark. 11; 87 *Id.* 443, 86 Ark. 68, is not in point.

Kirby, J., (after stating the facts.)   It is strongly urged that the trial court should have directed a verdict for the defendant, and that the judgment is not sustained by the evidence.   It is conceded that appellee was attempting to board the engine in the line of his duty, but insisted that, since there were two ways open for him to discharge this duty, one by standing on the track in front of the approaching engine and taking chances upon safely stepping upon an 8-inch toe plate upon the pilot of the locomotive, and the other by standing beside the track and mounting the gangway between the engine and tender, the latter being practically safe, and the other always fraught with more or less danger, as a matter of law he was guilty of such contributory negligence as would preclude his recovery by attempting to board the train in the more dangerous way, when a safer way was open to his selection at his own option; but under the circumstances of this case that was a question for the jury under proper instructions, and not one of law to be determined by the court.   *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443.

It was the duty of the engineer to slow up or reduce the speed of his engine upon the signal being given, as the uncontradicted testimony shows it to have been, and his failure to do so was negligence.   The appellee had a right to rely upon the engineer slowing or reducing the speed of the engine, after the slow signal was given, as was his duty and had been his custom; and when appellee discovered his failure to do so, he was confronted with an emergency, because of such negligence, calling for the exercise of his judgment, and the jury found he was not guilty of contributory negligence in failing to discover that the engineer had not regarded the signal until the engine was so close as to frighten and confuse him, and make it necessary to decide whether it was safer to attempt to jump off the track or board the engine, nor in boarding it under the circumstances; and the testimony is sufficient to sustain their verdict.   As already said, no objection to the giving or refusing of instructions is urged here.

The judgment is affirmed.