ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.*

CONARTY.

Opinion delivered February 3, 1913.

1.  MASTER AND SERVANT—RIGHT TO REMOVE CAUSE TO FEDERAL COURT.—The question of right of defendant to remove a cause to the Federal court on the ground of diversity of citizenship, which cause is brought under the Federal Employers Liability Act, as amended by the Act of April 5, 1910, is decided in *Kansas City Southern Railway Company* v. *Cook,* 100 Ark. 467, when it is held that the prohibition in the act against removal is valid.  (Page 425.)

2. Same—federal employers liability act—causes of action.—The Federal Employers Liability Act, as amended April 5, 1910, provides in the event of the death of the person injured, for the bringing of only one suit for the benefit of the widow and next of kin, which may include compensation for pain and suffering endured by the injured person' as well as for pecuniary loss of earnings and contributions. It is proper therefore, for the widow to sue as administratrix in the same action, for pecuniary loss to the widow and next of kin, and for the pain and suffering endured by the deceased. (Page 427.)

3. Same—same—same.—Under the Federal Employers Liability Act the right of action of deceased for pain and suffering survives to his personal representatives. (Page 427.)

Railroads—interstate commerce—safety appliance act.—When a car is loaded with coal at Huntington, Arkansas, and consigned to a point in Texas, but at a point in Oklahoma is found to be in need of heavy repairs, and it was returned to Fort Smith, Ark., for repairs, unloaded and placed on a storage track, and later, while being shifted with other cars from the storage to the repair track, it was left on the main track for a short while, and while there deceased was injured by reason of a collision between the said disabled coal car and an engine, on the footboard of which he was riding. Held, the disabled car was still in use for purposes of interstate commerce within the meaning of the Safety Appliance Act. (Page 429.)

5. Master and servant—injury to servant—safety appliance act.— When deceased was riding on the footboard of an engine, and the latter collided with a car used in interstate commerce, upon which were defective couplers, the railway company is liable under the Safety Appliance Act, for the injuries to deceased which would not have occurred but for the defective coupler, even though deceased was not attempting to use the coupler or to handle the car. (Page 430.)

6. Same—same—evidence of wife of deceased.—In an action against a railroad company by the administratrix, who is also the widow of the deceased, for damages for killing deceased, the wife may testify as to the amount of contributions made by him to her at various times, and such testimony does not fall within section 2 of schedule to Constitution of 1874, which provides in actions by administrators in which judgment may go for or against them, neither party shall be allowed to testify as to any transactions with or statements of the deceased, unless called by the opposite party. (Page 430.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans*, Judge; affirmed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1. The court erred in refusing to transfer to the Federal court. Congress has no power to confer jurisdiction upon a State court. The exception in the employers' liability act as amended April 5, 1910, attempting to deprive a defendant of the right of removal to the Federal court is clearly unconstitutional. Art. 3, § § 1-3, Const. U. S.; 36 Fed. 337-355; 33 Fed. 84, 85; 1 Wheaton, 304-327; 98 Fed. 833-837; 165 U. S. 275-279; 3 Clifford, 552-560; 45 Fed. 804-810; 3 McLean, 204; 20 Fed. 690, 691; 81 Fed. 518; 215 U. S. 437.

2. At the time of the accident the car in question was not engaged in interstate commerce, but, being in a crippled condition, it had been, pursuant to the company's duty and its legal right, withdrawn from such interstate commerce. 174 Fed. 399; 178 Fed. 873; 168 Fed. 236; 220 U. S. 580-585; 188 Mass. 390, 74 N. E. 591; 46 Fed. 664.

3. The defective condition of the car was not the proximate cause of the injury. The collision was caused by the shining of a headlight in the faces of the switchmen. The defective condition of the coupling had nothing to do with it, and the absence of a coupler was not the proximate cause. 43 Ia. 396; 50 Fed. 725; 90 Ala. 32; 55 Fed. 949; 88 Fed. 860; 145 Fed. 273; 100 Fed. 256; 152 Fed. 120; 144 Fed. 605; 94 U. S. 475; 56 Ark. 271-275; 86 Ark. 289; 91 Ark. 260; 39 Fed. 255; 128 Fed. 529.

It was not in the province either of the court or the jury to transfer a remote cause into the proximate cause. 124 Fed. 113; 196 U. S. 1-19.

4. There was no duty resting on deceased to go between the cars or to remain on a footboard when he could easily have stepped off. The law requiring the company to furnish automatic couplers imposes the correlative duty upon an employee to refrain from unnecessarily going between the cars. 128 Fed. 529.

5. The testimony of appellee as to transactions with the deceased, the amount of contributions by him, etc., was incompetent, and was erroneously admitted. Const.,

Ark., Schedule 2; 48 Ark. 133; 51 Ark. 401; 52 Ark. 520; 67 Ark. 318; 79 Ark. 69; 80 Ark. 272; 82 Ark. 138; 83 Ark. 210; 30 Fed. 653; 71 Fed. 226; 81 Fed. 537; 112 Fed. 89; 102 U. S. 664.

6.   The act of April 5, 1910, made the cause of action for pain and suffering survive to the administrator for the benefit of the widow and next of kin, but provided, "but in such cases there shall be only one recovery for the same injury." The language of the statute must mean that the next of kin or administrator shall elect whether or not he will recover for pain and suffering or for the pecuniary loss to the surviving next of kin.   52 Fed. 371; 182 Fed. 346.

*Sam R. Chew,* for appellee.

1.   Appellant can not escape its civil liability in this case by the allegation or proof that it was moving the defective car to its repair track for the purpose of having it repaired.   The act of 1910, while it released a carrier from *the penalty* prescribed by the Act of 1893 when hauling a defective car to the nearest repair point, yet it expressly provides that such hauling *shall be at the sole risk of the carrier,* and that nothing in the act shall be so construed as to relieve the carrier from liability in any remedial action for the death or injury of any employee caused by the moving of a defectively equipped car, etc. See Act of April 14, 1910, title and sections 4 and 5; U. S. Senate Report No. 250, 61st Congress, 2d session, p. 3; 167 Fed. 663; 169 Fed. 372; 179 Fed. 893; 65 C. C. A. 226; 129 Fed. 522; 222 U. S. 100, 56 Law. Ed. 72; 220 U. S. 580; 55 Law. Ed. 591; 106 C. C. A. 160; 71 Ark. 445; 83 Ark. 591; 210 U. S. 281, 52 Law. Ed. 1061; 196 U. S. 1, 49 Law. Ed. 363.

2.   The trial court had jurisdiction. Undoubtedly it is within the power of Congress to confer concurrent jurisdiction upon the State courts for the trial of causes brought under the act.   192 Fed. 353; 194 Fed. 747; 223 U. S. 1.

3.   The action for pain and suffering survives, and

it is plain that Congress intended that a recovery for pain and suffering should be sustained for the benefit of the widow and children together with the cause for the loss of services of the deceased.   Act April 5, 1910, § 2.

4.   The proof is conclusive that there was no drawbar in the end of the car in question.   The defective condition of the car was the direct proximate cause of the injury; yet, appellant is liable if the defect in the car contributed only in part to the injury.   Act of 1893, § 1; Act April 2, 1908, § 1.

5.   Appellee's testimony was competent.   26 Ark. 476.

McCULLOCH, C. J.   This action was instituted by Fannie M. Conarty as administratrix of the estate of W. G. Conarty, deceased, against the St. Louis & San Francisco Railroad Company, to recover damages, for the benefit of herself, as widow, and her children, as next of kin of said decedent, on account of the death of said decedent, which is alleged to have resulted from the wrongful act of defendant in using a car not equipped with safety appliances required by the Federal statute. It is alleged that the car in question was being used in interstate commerce, and that decedent was employed by defendant and was engaged at the time of his injury and death in handling cars in interstate commerce.   The action was instituted under the act of Congress known as the Employers' Liability Act, as amended by the act of April 5, 1910, and is based upon the Safety Appliance Act.   Damages are sought to be recovered on account of loss of contributions, and also on account of the decedent's right of action for suffering endured by him. The plaintiff recovered a judgment below for damages in the sum of $10,000, and defendant appealed.

Defendant presented its petition and bond for removal to the Federal court on account of diversity of citizenship.   The petition was denied, and that ruling is assigned as error.

The question of the right to remove a case on account of diversity of citizenship in an action instituted under

the Employers' Liability Act of Congress was presented and fully argued in the case of *Kansas City Southern Ry. Co.* v. *Cook,* 100 Ark. 467, and it was decided against the present contention of defendant. We held that the act of Congress expressly provides that there shall be no removal and that the prohibition is valid. We adhere to that conclusion.

The next contention is, that the statute does not permit a recovery both for pecuniary loss to the widow and next of kin and for the pain and suffering endured by deceased for the recovery of which the right of action of the deceased survived. A motion was made below, treating the complaint as setting forth two causes of action, and asking that plaintiff be required to elect which of them she would prosecute. The Federal statute as originally enacted gave a cause of action, first, to the injured employee, which, of course, included as elements of damage pain and suffering endured as well as pecuniary injury resulting from loss of earning; and, next, to the widow and next of kin in the event of the death of such injured employee, the measure of damages being the pecuniary loss sustained by such widow and next of kin on account of such death. It was held that the cause of action given to the injured person did not survive his death but died with him, and that a new cause of action then arose in favor of the personal representative for the benefit of the widow and next of kin. *Fulghum* v. *Midland Valley Rd. Co.,* 167 Fed. 660; *Welch* v. *New York, N. H. & H. Rd. Co.,* 173 Fed. 494. The result was that, if the injured person died after bringing suit, his personal representative could not be substituted to prosecute the suit for the benefit of the widow and next of kin, but had to bring a new action for that purpose, and the pain and suffering endured by the injured person was not an element of recoverable damages sustained by the widow and next of kin and could not be recovered for their benefit. To change this condition of the law, Congress enacted the amendatory statute (approved April 5, 1910), providing that "any right of action given

by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.''

The statute as thus amended forbids the prosecution of more than one action and permits only one recovery; but the action is prosecuted, after the death of the injured person, for the benefit of the widow and next of kin, and may include compensation for the pain and suffering endured by the injured person as well as for pecuniary loss of earnings and contributions; in other words, compensation for all of the damages resulting from the injury for which the statute provides a remedy inures after the death of the injured person to the benefit of the widow and next of kin, but must be recovered in one action. In the present case no action had been instituted by the injured employee, and plaintiff prosecuted only one cause of action and seeks only one recovery for the various elements of damages for which the statute authorizes a recovery of compensation. There was, therefore, nothing to call for an election between different causes of action.

The defectively equipped car which is alleged to have caused the injury was loaded with coal at Huntington, Arkansas, and was consigned over defendant's line to some point in the State of Texas. After it had been loaded and started on its journey over defendant's line through the State of Oklahoma, it was found to be in a damaged condition. The draw-bar and coupling on one end were broken off so that there were no means of coupling the car at all, and the draft timbers and head-block were gone. The car was not in condition for use, and the employees in charge of the train caused it to be carried for repairs to Fort Smith in another train, a distance of fourteen miles off the route of the car's journey to its destination. It needed what is termed ''heavy''

repairs, and the evidence tends to show that such repairs could not be made at the place where the disabled condition of the car was discovered, and that Fort Smith was the nearest place where such repairs could be conveniently made. When the car reached the yards at Fort Smith it was placed on the track used for storing disabled cars when the repair track was full but which was used for commercial purposes when not in use as a storage track. There were three tracks upon which cars were repaired, but they were full at the time. The car remained unloaded at the time deceased was injured so as to be ready to resume its original journey when repaired. Afterwards it became necessary, in order to get the car over to the repair track, to move it, together with twelve or fourteen others, from the storage tracks, where it was standing, and carried a distance of about three-fourths of a mile, and set in on the main track, where it was to remain while other cars were being switched. This was at night. There was a rule of the company that ''second and third class trains must move within the yard limits prepared to stop unless the main track is seen or known to be clear.'' Deceased was a switchman engaged in making up trains of cars for interstate shipment. His post of duty while the switch engine was moving was on the footboard in front of the engine on the right-hand side of the draw bar, so as to be ready to couple the engine to cars. His engine was going northward on the main track for the purpose of doing some switching in making up cars for a through freight train. He and two of the switchmen were standing on the front foot-board, as usual, when the engine collided with the disabled coal car hereinbefore mentioned. The other two men stepped off the foot-board after they discovered the car in front, but deceased remained in his position on the foot-board, and the car, on account of the missing draw-bar, coupling and draw-head, came in contact with the engine and crushed him. The testimony shows that if the coupling had been in good order the impact would have coupled the car and engine together, or would have

bumped the car off, in either event obviating any injury to deceased. The engine was moving at a low rate of speed, and, according to testimony adduced, the glare of the headlight on another engine facing them prevented the men on the switch-engine from discovering this car earlier. Deceased discovered the car first and called out, "There is a car," whereupon a signal was given to the engineer, who at once began stopping the engine but too late to prevent the collision. Deceased lived several days, and, according to the testimony, suffered great pain.

Our conclusion is, that the jury were warranted in finding that when the injury occurred the car was still in use for purposes of interstate commerce within the meaning of the Safety Appliance Act. The statute, as interpreted by the Supreme Court of the United States, imposes upon the carrier the absolute duty to provide and keep proper couplers at all times and under all circumstances on cars while used in interstate commerce, and the carrier can not escape liability by showing that it exercised reasonable care in equipping its cars with the required safety appliances and used due diligence to keep them in repair. *St. L., I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281; *C., B & Q. Ry. Co.* v. *United States,* 220 U. S. 559; *Delk* v. *St. Louis & San Francisco Rd. Co.,* 220 U. S. 580.

The fact that this car had been taken to Fort Smith for heavy repairs before it could continue its journey did not suspend its use as an interstate commerce car at the time it was being switched about the tracks in the yards where employees engaged in handling trains would come in contact with it. When the company ordered that the car be moved from the storage track to other tracks for any purpose, it incurred the absolute duty, while the car was being moved, to see that it was properly equipped in accordance with the statute, and is liable for damages sustained by its lack of proper equipment. The statute has been amended so as to exclude the criminal penalty while the car is being "hauled from the place where such

equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired," but the amendatory statute expressly provides that "such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or connection with the movement or hauling of such car with equipment which is defective or insecure."

It is also contended that the defective condition of the car was not the proximate cause of the injury, because deceased was not attempting to use the coupler or to couple on to or handle that car. The argument is, that the injury resulted from the collision, which was in no way attributable to the absence of a properly equipped coupler. It is true the Supreme Court of the United States said, in the case of *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, "the risk in coupling and uncoupling was the evil sought to be remedied, and that risk was to be obviated by the use of couplers actually coupling automatically." But the act makes it unlawful for a common carrier "to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers automatically coupling by impact," and liability necessarily follows for an injury to an employee by reason of failure of the carrier to comply with the statute.

The evidence establishes the fact that the injury to deceased would not have occurred but for the absence of proper equipment. That was the direct cause of the injury, notwithstanding the collision. *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Holloway,* 191 U. S. 334.

The only remaining question necessary to mention is the assignment of error as to the ruling of the court in permitting the plaintiff, who was the wife of deceased and administratrix of his estate, to testify as to the amount of contributions made by him to her at various times. It is insisted that her testimony fell within the

constitutional provision that "in actions by or against executors, administrators or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testate, intestate or ward, unless called to testify thereto by the opposite party." Section 2 of Schedule to Constitution of 1874.

The question is decided adversely to defendant's contention in the case of *St. Louis & San Francisco Rd. Co.* v. *Fithian,* 106 Ark. 491, the decision being based upon the view that the administrator in this class of cases acts merely as a trustee and that it is not such an action as falls within the above quoted provision. The writer is satisfied with the conclusion reached on that question, but does not feel sure that the grounds for the decision are sound, inasmuch as a judgment for costs may be rendered against the estate. *Bush* v. *Prescott & N. W. Ry. Co.,* 83 Ark. 210. He feels more secure in the conclusion that the testimony does not fall within the constitutional inhibition, for the reason that it establishes facts entirely collateral to the main issue, *i. e.,* the liability of the defendant, and merely goes to the question of amount. The provision in question was aimed at an exclusion of the testimony of one party as to the transaction which constituted the basis of the cause of action and not merely to transactions which are purely collateral to the main issue. This view is sustained by the decision of the Supreme Court of the United States in *United States* v. *Clark,* 96 U. S. 37, and is undoubtedly sound. There the question arose whether a claimant against the Government should be permitted to testify concerning the amount of money contained in a lost package for which the Government was liable, there being a statute of the United States which prohibited a claimant against the Government from testifying. The court said:

"We are of the opinion that, by the rules of evidence derived from the common law, as it is understood in the United States, whenever it becomes important to ascer-

tain the contents of a box, trunk or package which has been lost or destroyed, under circumstances that make some one liable in a court of justice for the loss, and the loss and the liability are established by other testimony, the owner or party interested in the loss, though he may be a party to the suit, is a competent witness to prove the contents so lost or destroyed. 1 Greenl. Evid. § § 348-350, and notes. This is one of those exceptions to the rigorous rule of the common law excluding parties and persons having an interest in the result of the suit from becoming witnesses in their own behalf, which has been engrafted upon that system. It is founded in the necessity of permitting the only party who knows the matter to be proved to testify, in order to prevent an absolute failure of justice, where his right to relief has been established by other evidence. We are aware that there is a conflict of authority on this point, but we believe the preponderance is in favor of the proposition we have stated; and looking at it as a matter of principle, in the light of the progress of legislation and judicial decision, in the direction of more liberal rules of evidence, we have no hesitation in adopting it, in the absence of legislation by Congress on the subject."

In the present case, and in cases of like character, the liability of the defendant for whatever injury has been sustainend is established by other testimony, and, as before stated, the question of the amount of contributions is collateral to the main issue, and tends only to establish the amount of the liability. For that reason it does not encroach upon the provision against allowing parties to a transaction with a decedent to testify, the evident meaning of the word "transaction" being that which contsitutes the asserted cause of action.

No error is found in the present record, and the judgment of the circuit court is affirmed.