KANSAS CITY SOUTHERN RAILWAY COMPANY v.
LESLIE, ADMINISTRATOR.

Opinion delivered April 6, 1914.

1. REMOVAL OF CAUSES—FEDERAL EMPLOYERS' LIABILITY ACT—WRONGFUL DEATH.—It is proper for the trial court to refuse to transfer to the Federal court, an action brought in the State court, by the administrator of the deceased, to recover damages on account of the wrongful death of deceased, caused by the negligence of defendant railroad company. (Page 316.)

2. PLEADING—UNNECESSARY ALLEGATIONS—DEMURRER—MOTION TO MAKE MORE DEFINITE AND CERTAIN.—Although a complaint is redundant in parts and contains unnecessary detailed descriptions, if, on the whole, it contains allegations sufficient to state a cause of action, it is proper for the court to overrule a demurrer thereto, and to overrule a motion to strike and to make more definite and certain. (Page 316.)

3. CONTINUANCES — AMENDED COMPLAINT — SURPRISE — DEFENSE.— Although an amended complaint was filed less than ten days before the date of trial, where the evidence showed that defendant had thoroughly investigated the facts therein alleged, and the amended complaint merely restated the allegations of the original com-

plaint more fully, the refusal of the court to grant a continuance on defendant's motion, *held*, not to constitute prejudicial error. (Page 317.)

4. EVIDENCE—ADMISSION OF INCOMPETENT TESTIMONY—HOW EXCLUDED.—Where testimony is admitted over objection, which is competent and relevant at the time of its admission, but such testimony is later rendered incompetent by evidence subsequently introduced, it is the duty of the objecting party to move to exclude the testimony after it appears that it is incompetent. (Page 319.)

5. MASTER AND SERVANT—DEATH OF SERVANT—SAFE APPLIANCES—SAFE PLACE TO WORK.—It is the duty of an employer to provide his servants with a safe place in which, and with safe appliances with which, to work, and where the employee of a railroad company is killed, it is a question for the jury, whether the railroad provided proper and safe appliances on its cars, for the use of its employees, in the course of this employment. (Page 321.)

6. EVIDENCE—CROSS EXAMINATION—QUESTION NOT RESPONSIVE TO EXAMINATION IN CHIEF.—Where, on cross examination, a witness is asked a question which is not responsive to the examination in chief, but which is otherwise competent and relevant to the issue, the answer is properly admitted, when the objecting party does not specifically object to the question on the ground that it is not responsive to the examination in chief. (Page 322.)

7. MASTER AND SERVANT—DEATH OF SERVANT—PROXIMATE CAUSE—CIRCUMSTANCES.—Where deceased was killed by the operation of a train, when there were no eyewitnesses to the injury resulting in death, negligent acts of defendant company may be shown to be the proximate cause of the death, by circumstantial evidence. (Page 324.)

8. EVIDENCE—ADMISSIONS AGAINST INTEREST—ACTION FOR WRONGFUL DEATH.—In an action by the administrator under the Federal Employers' Liability Act as amended April 5, 1910, for damages on account of the wrongful death of an employee, due to the negligence of the railroad company, where the two causes of action given by the statute are tried together, evidence of admissions by deceased against his interest, as to the cause of his death are properly excluded in the action to recover for loss of contribution to the widow and child of the deceased. (Page 327.)

9. EVIDENCE—TESTIMONY COMPETENT FOR ONE PURPOSE—ADMISSIBILITY.—Where evidence is competent in a cause for a specific purpose and otherwise incompetent, it is the duty of the party offering the same to request the court to admit the testimony for the purpose for which it is competent. (Page 329.)

10. EVIDENCE—ACTIONS UNDER FEDERAL STATUTES—RULES.—In an action brought in a State court to enforce rights given by a Federal stat-

ute, the rules of evidence of the State court control, unless otherwise provided by the Federal law. (Page 329.)

11. APPEAL AND ERROR—OBJECTIONS TO INSTRUCTIONS—FAILURE TO ABSTRACT.—Where appellant fails to abstract specific objections to the rulings of the trial court, in the giving and refusing prayers for instructions, the objections will not be considered. (Page 331.)

12. JUDGMENTS—CONSOLIDATED CAUSES OF ACTION—FORM OF VERDICT.—In an action under the Federal Employers' Liability Act, where the judgment rendered does not separate the amounts found due for pain and suffering and for compensation for loss of contributions, but where the judgment clearly is not excessive, when all the proper elements of damage are considered, the form of the verdict and judgment will not be held to be prejudicial. (Page 331.)

Appeal from Little River Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is a suit brought by the appellee as administrator of the estate of Leslie A. Old, deceased, for the benefit of the widow and her infant child, under the Federal Employers' Liability Act and its amendment of April 5, 1910. The suit is brought for the loss of contributions to the widow and child by reason of the death of Old, and also for the conscious pain and suffering which Old endured before his death, which, under the act, survived to the administrator for the benefit of his widow and child.

The complaint, after alleging the incorporation of the appellant, and that it was engaged in interstate commerce, and after alleging that Leslie A. Old was in the employment of appellant as swing brakeman, actually engaged at the time of his injuries as such brakeman on a train that was being operated at the time in interstate commerce, alleged "that his work required him to look after and pass over the tops of the cars composing the middle section of said train; that there were two box cars or refrigerator cars of equal height, and that immediately in front of these two cars was an oil tank car; that the floor of this car was seven or eight feet lower than the runway on top of the refrigerator car immediately in its rear; that there were no ladders or grab-irons or

hand-holds on the end of the box or refrigerator car to enable the brakeman to safely get from the top of the box or refrigerator car onto the platform or runway on the oil car immediately in front of it, except a ladder or grab-iron down the side of the refrigerator car some distance from the end thereof, that the absence of these grab-irons or hand-holds or ladders down the end of the box or refrigerator car made it unnecessarily hazardous for the brakeman to pass from the top of the box or refrigerator car to the platform or walkway of the oil tank car immediately in front of it; that there were no grab-irons or hand-holds on the end of the oil car or tank car immediately in front of the refrigerator car or any other appliances thereon to enable a brakeman in passing from the rear car to the oil car to hold to and steady himself while making the passage.''

The complaint further alleged ''that the engineer of said train was negligent on the occasion of deceased's injury in permitting his air to become out of order or in carelessly manipulating his air in such manner that said train was caused to jerk violently and unusually, which jerking contributed to the injury of plaintiff's deceased as aforesaid.''

There were further allegations in the complaint to the effect that the defendant was negligent in making up said train ''in carelessly and negligently placing the oil car or tank next to the box or refrigerator car knowing the platform or walkway on the oil car was some six or seven feet lower than the top of the box or refrigerator car, without providing some means or appliances on both the refrigerator car and the oil car which would enable brakemen to get from one to the other without any unnecessary danger.''

There is an allegation to the effect that the acts of negligence complained of were unknown to the deceased, and by reason of his inexperience as a brakeman, he was unable to, and did not, appreciate the dangers arising from said acts of negligence.

There was a further allegation to the effect that "by reason of the absence of such hand-holds or ladders on the end of said box car or other proper appliances which would have enabled deceased to safely go from the top of said box car to said oil car, concurring with the unusual and violent jerking of the train as it passed out of Page, deceased was unable to get from the top of the box car to the oil car, and while in the effort to do so, and while in the exercise of due care himself, he was thrown between the ends of the said cars, or fell between the ends of said cars" and received the injuries, which were specifically described.

The complaint concluded with a prayer for damages on account of pain and suffering in the sum of ten thousand dollars and for loss of contributions in the sum of fifteen thousand dollars, and for a judgment in the total sum of twenty-five thousand dollars.

The appellant in due time and form, filed a petition and bond for removal of the cause to the Federal court, which was overruled. The appellant also moved to have the complaint made more definite and certain, which motion was overruled. Appellant then demurred, and its demurrer was overruled. Appellant then moved to strike out certain portions of the complaint, which motion was overruled. Appellant then answered, denying the allegations of the complaint and setting up the defense of contributory negligence. The appellant then filed a motion for a continuance, which was overruled. The appellant duly excepted to the rulings of the court on its motions and in overruling its demurrer.

The cause was then sent to the jury, and the testimony developed the following facts, as stated by counsel for appellee, which we find to be substantially correct.

On the forenoon of March 24, 1913, Leslie A. Old was sent out from De Queen, Arkansas, as middle brakeman on appellant's through freight train to Heavener, Oklahoma. Old was called for service on the train about an hour before it left De Queen. Appellant's road traverses a mountainous country, and there were some

heavy grades from Mena north. Before descending these grades, it was necessary for the brakemen to go over the tops of the cars and turn up the retainer valves on from 75 to 80 per cent of the loaded cars, in order to assist the engineer down grade, and after the descent was made it was then necessary for the brakemen to again go over the tops of the cars and turn the retainer valves down. It was upgrade from Mena to Rich Mountain, and from Rich Mountain to Page, where the injury occurred, it was down grade. From Page two miles north it was up grade and then north down grade set in. The train arrived at Page at 8 o'clock at night and stopped there to get orders for future movements. Old and the head brakeman and the conductor all went in the station house at Page to secure their orders. They then left the station house to take up their duties on the train. The head brakeman came out first with orders for the engineer and proceeded to the front end of the train. Then the conductor came out and walked to the south end of the platform, about eighty feet from the station, and stopped. By this time the train had started slowly forward. Old passed the conductor, with his lantern, going south, and a very short time thereafter the conductor saw some man with a lantern climb up on the train about eighty feet south of him and from the point where he saw Old go. As the train moved slowly along a man with a lantern on top of the train, going north, passed the conductor. The car that the man was on was the second car in the rear of the tank car. As the train moved out there was a violent and unusual jerking of the cars, two jerks being especially noticeable. Just after the last heavy jerk some one was heard to cry out "Oh, Oh!" as if calling for help. After the train passed out a witness whose attention was attracted by the unusual jerking of the train went out on the track to discover what was the cause of the jerking, and ninety-five yards north of the front door of the station he found Leslie Old lying on the track between the rails with both legs cut off between the knees and the feet, one shoulder crushed and

mangled, part of the left hand crushed off, and skin knocked off his head. Some fifteen or eighteen feet south of where he lay his lantern was found lying on the track between the rails, with the broken globe lying around it. About seven feet north of the lantern blood and small pieces of bone were found on the rail nearest the depot, and pieces of bone and blood were also found between this point and where the deceased lay. There were no signs of blood or bones anywhere else.

The two cars immediately in the rear of the tank car complained of were S. F. R. D. cars, of the same type and height. The tank car was a large iron tank set upon a frame in the nature of a flat car, and that part of the floor of this car between the tank and the outer edge was the only walkway or passageway over this tank car. The tank car had side rails on the outer edges of the side of the car which lacked twenty-four inches coming to the end of the frame of the car. The only appliance furnished the brakemen to pass from the top of the S. F. R. D. car to the tank car was a side ladder on the end thereof. One had to step from this side ladder onto the end of the tank car and grab to the end of the side rail on said car. From the side ladder to the nearest end of the side rail was about five feet. There was no end ladder on the S. F. R. D. car and no grab-irons on the end of that car except down near the bottom of the car, which was used by the brakemen in coupling and uncoupling cars. There were no end ladders or grab-irons on the tank car at all except on the sill below the floor. There was nothing on the end of the tank car for the brakemen to hold to while making the passage except the end of the side rail. It was necessary for a brakeman, in passing from the side ladder on the S. F. R. D. car to the tank car, while the train was in motion, to release his hold on the former before he was able to secure a hand-hold on the railing on the tank car.

It was shown that the train would have to go a quarter or a half mile after starting before it could get under good headway.

The appellant excepted to the rulings of the court in admitting and excluding testimony.

The appellant presented ninety-seven prayers for instructions. Of these the court refused all but seven. The court granted ten prayers for instructions on behalf of appellee, and gave eight instructions of its own motion. The appellant excepted to the rulings of the court in refusing its prayers for instructions, and also excepted to the rulings of the court in granting the prayers of appellee for instructions, and to the giving of the instructions by the court of its own motion.

The jury returned a verdict in favor of the appellee for $25,000. The court caused a remittitur to be entered in the sum of $7,000, and overruled appellant's motion for a new trial, and entered judgment in favor of the appellee for the sum of $18,000, from which this appeal has been duly prosecuted.

Other facts stated in the opinion.

*Read & McDonough*, for appellant.

1. The court erred in denying the petition for removal to the United States court. We insist, notwithstanding the opinion of the court in the *Cook* case, 100 Ark. 467, and the *Conarty* case, 106 Ark. 421, 155 S. W. (Ark.) 93, that the act of Congress of 1908, as amended by the act of April 5, 1910, did not intend to destroy the right of removal where the diversity of citizenship exists. The claim of a right of removal raises a Federal question. 33 Sup. C. R. 974; *Id.* 1003; 229 U. S. 123.

2. The motion to strike should have been sustained.

3. The court erred in overruling the motion to make the complaint more definite and certain. 66 Ark. 278; 102 Ark. 187; 98 Ark. 481; 89 Ark. 136; 94 Ark. 524; 93 Ark. 392.

4. The court having refused to have stricken from the complaint its many unnecessary allegations, and to require the same to be made more definite and certain should have sustained the demurrer. 89 Ark. 136, and cases cited.

5. The motion for continuance to enable appellant to prepare to meet the new issues raised within less than ten days before the commencement of the term by the amendment to the complaint, should have been sustained. 78 Ark. 536; 71 Ark. 197; 67 Ark. 142; 21 Ark. 460; 85 Ark. 334; 95 Ark. 291; 99 Ark. 394; 35 Ark. 247.

6. It was reversible error to admit testimony showing that there had been trouble with the air in two cars which had been set out at Rich Mountain and Howard. 67 Ark. 112; 68 Ark. 225; 66 Ark. 494; 76 Ark. 302; 58 Ark. 125; Id. 454; 48 Ark. 460; 3 Elliott on Evidence, § 2506; 1 Id., § 185, and cases cited; 132 Pac. 112; 86 Atl. 16; 160 Ill. App. 458; 131 N. W. 165; 92 Pac. 922; 100 S. W. 675; 102 Me. 39; 98 N. W. 569; 115 Mass. 239; 60 Mo. 227.

7. Testimony of witnesses tending to show that railroads in the United States use end ladders on fifty to seventy-five per cent of refrigerator cars or box cars, was inadmissible. The evidence of these witnesses to the effect that it would be easier for a brakeman to pass from the refrigerator car to the tank car if there were hand-holds on the former car was inadmissible because, (1) they did not qualify as experts. 66 Ark. 494; 65 Ark. 98; 1 Elliott on Evidence, § § 672, 674, 675 and 683; 2 Id., § § 1041, 1042, 1078 and 1095; 3 Id., § 2509.

Facts rather than opinions must be given. 166 Ill. App. 306. (2) It is admissible because it does not tend to show negligence. Under the interstate commerce act, and the rulings of the Interstate Commerce Commission, carriers are not required to change the hand-holds until 1916. 1 Fed. Stat. Annotated, Supp. 1912, pp. 335, 336; 6 Id. 752-756; 10 Id. 375; 188 Fed. 516; 130 N. Y. S. 917; 80 Atl. 779; 54 Ark. 389; 132 N. W. 513; 139 S. W. 172; 6 Thompson on Neg., § 7777; 4 Id., § 4770; 152 Pa. St. 314; 23 Ohio C. C. 207.

The admissibility of this testimony is a Federal question, and under the act of Congress it is wholly inadmissible, because it takes away from the Interstate Commerce Commission the power to regulate the hand-

holds, and leaves the same to the evidence of witnesses and to the shifting verdicts of juries. Such is not the intention of the act of Congress. 33 S. C. Rep. 858; 222 U. S. 222.

8. It was error to exclude testimony tending to show that under the rules of the Interstate Commerce Commission appellant could not refuse to accept the cars in controversy for shipment, and that, under said rules, the cars were properly equipped. The decisions of the Interstate Commerce Commission are law until reversed or suspended. 200 Fed. 652.

9. The court erred in refusing to direct a verdict for appellant. It is well established that no presumption of negligence arises from the occurrence of the injury. It is also well established that the happening of an accident and the existence of negligence, or of a negligent condition of affairs, is not sufficient to authorize a verdict for a plaintiff, but there must be a causal relation between the injury and the alleged negligence. There is no negligence shown in this case. 181 Fed. 91; 190 Fed. 717; 107 Ark. 476; 179 U. S. 658; 90 Fed. 717; 139 Fed. 737; 145 Fed. 327; 159 S. W. (Ark.) 214; 33 S. C. Rep. 858.

10. The court's instruction numbered 10, is erroneous because it does not state the measure of damages under the Federal law; which superseded the State law on the question, and governs the measure of damages. 226 U. S. 570; 33 S. C. Rep. 192.

11. It was error to exclude testimony as to the admission of Leslie Old to the effect that he attempted to catch the train and slipped. A motion to exclude testimony should be overruled where the testimony is admissible for any purpose; and it is error to exclude the entire evidence of a witness when that evidence is admissible as to a part of the case. 107 Ark. 494; 87 Ark. 243; *Id.* 331; 49 S. W. 859; 38 Cyc. 1348 and cases cited; 229 U. S. 265; 33 S. C. Rep. 703; *Id.* 191; *Id.* 426.

12. The verdict was excessive. The damages under the second employer's liability act is limited to the pecuniary loss sustained. 197 Fed. 715; 83 Atl. 788.

The measure of damages is the present worth of a sum which, paid in annual installments for the term of decedent's life would give the beneficiary the annual amount of decedent's contributions. 83 Atl. (N. J.) 1006; 142 N. W. 67.

Before there can be any recovery there must be evidence that deceased contributed to the support, and how much. 137 N. W. 1114.

Earnings during the expectancy of life are not recoverable by the widow and children. 77 S. E. (Ga.) 803.

*Sam E. Leslie, J. S. Butt* and *W. P. Feazell,* for appellee.

1. The petition to remove to Federal court was properly denied. 100 Ark. 467; 155 S. W. 93; 223 U. S. 1; 192 Fed. 353-747; 193 *Id.* 293, 303, 768; 197 *Id.* 85; 142 S. W. 944; 147 Ky. 315.

2. The motion to strike was frivolous and the motion to make complaint more definite is without merit. 62 Ark. 281; 94 *Id.* 365.

3. Continuances are in the sound discretion of the court. No abuse of discretion is shown. 93 Ark. 120.

4. There was no prejudicial error in admitting evidence of trouble with the air, nor the evidence of Frank Sweeney and other expert brakemen. 156 S. W. 171; 81 *Id.* 592; 90 *Id.* 145; 20 Cyc. 634b; 29 *Id.* 425a; 151 S. W. 252, and numerous others.

5. It is not within the power of the Interstate Commerce Commission to relieve a carrier of civil liability arising from negligence. Nor has Congress the power. 79 Ark. 496. A penal statute neither creates nor abrogates a civil duty enforceable under the common law. 121 Am. St. 164; 89 Pa. St. 71; 33 Sup. Ct. Rep. 864.

6. The opinion of Clayton was admissible. 104 Ark. 341.

7. The question of negligence and the causal relation between that negligence and the injury were purely

questions for the jury, and their verdict is final. 60 Mo. App. 118; 75 Ark. 479; 103 *Id.* 61; 105 *Id.* 334; 156 S. W. 171; 157 *Id.* 1016.

8.  Holt's testimony was inadmissible. 155 S. W. 93; 102 Ark. 461; 92 *Id.* 159; 1 Gr. on Ev., § 189; 2 Wigmore on Ev., § 1081; 112 U. S. 442; 21 Ark. 79; 13 *Id.* 295.

9.  There were no specific objections to the instructions. General objections are not sufficient. No. 10 for appellee was approved in 76 Ark.

10.  The verdict is not excessive. Rodgers on Dom. Rel., § § 494-500; 77 S. W. 255; 163 Mich. 268; 37 L. R. A. (N. S.) 32; 122 Fed. 836; 96 S. W. 674; 13 Hun. 4; 227 U. S. 145; Thompson on Negl., § 7085; Cooley on Torts (2 ed.), 573; 3 Sutherland on Dam. 284; Tiffany on Death by Wrongful Act, § 160; 57 Pa. St. 335; 5 Wall. 90; 157 U. S. 72; 59 N. E. 50. Not only the pain and suffering, but the pecuniary loss of *earnings* and contributions are recoverable under Federal Employers' Liability Act. 155 S. W. 94; 74 Ark. 326; 61 Pac. 606.

11.  The question as to whether the amounts due each beneficiary were found by the jury was not raised below and can not be raised in this court. 33 S. C. Rep. 26; 101 Ark. 522; 95 *Id.* 593; 96 *Id.* 405; 94 *Id.* 390.

WOOD, J., (after stating the facts). 1. The court did not err in denying the petition for removal to the Federal court. *St. Louis & S. F. Ry. Co.* v. *Conarty,* 106 Ark. 421; *Kansas City So. Ry. Co.* v. *Cook,* 100 Ark. 467.

2.  The complaint alleged that the appellant was negligent in not providing ladders and grab-irons on the ends of the cars to enable the brakemen to pass safely from one car to the other, and that appellant was negligent in the manner of making up its train by placing the tank car next to a high car, and that appellant was negligent in that its engineer handled his engine in such manner as to cause the train to unnecessarily and violently lurch and jerk, and that the negligence in failing to provide necessary hand-holds, ladders or other appliances to enable the brakemen to pass safely from one car to the other, concurring with the alleged negligence

of the engineer, caused the injury to Old, of which the appellee complained. These allegations were sufficient to state a cause of action against appellant.

The court did not err, therefore, in overruling appellant's motions to strike, and to make more definite and certain, and in overruling the demurrer. While some portions of the complaint were redundant and the pleader entered into unnecessary detail of description, the complaint for that reason was not defective, and there was no prejudicial error in refusing to strike out such unnecessary allegations.

It is not in best form to enter into more specific detail in stating a cause of action than is necessary to advise the defendant of the particular grounds upon which the complainant seeks to hold him liable. These grounds should be stated with as much definiteness and certainty as possible, but more specific details are not required and are matters to be developed by the testimony. See *Little Rock & Fort Smith Ry. Co.* v. *Smith,* 66 Ark. 278.

3. The appellant contends that the amended complaint was filed within less than ten days before the beginning of the term of court, and that the amended complaint stated new causes of action, which entitled appellant to a continuance. The alleged new causes of action are: *First,* "that there were no grab-irons or handholds on the end of the oil car or tank car immediately in front of the refrigerator car, or any other appliances thereon, to enable brakemen, in passing from the rear car to the oil or tank car to hold to and steady himself while making said passage;" *second,* "that the engineer of said defendant was negligent on the occasion of plaintiff's injury in permitting his air to become out of order, or in carelessly manipulating his air in such manner that said train was caused to jerk violently and unusually, which jerking contributed to the injury of plaintiff's deceased, as aforesaid."

On account of the alleged new cause of action in regard to the tank car the appellant set forth that "it was impossible for the defendant to get a fair trial herein

without having sufficient time to fully investigate the history especially of said tank car. * * * It is absolutely necessary for a fair trial herein that defendant have time enough to get the complete history of each tank car in said train so as to prepare to meet the plaintiff's proof on the subject." The appellant further set forth that "defendant can not safely go to trial without the full history of each refrigerator car in controversy, so as to enable the defendant to ascertain whether or not the cars were in service before July, 1911."

There was no prejudicial error in overruling the motion for a continuance on these grounds, for, at the trial, it was shown, without objection, that the defendant had made investigation and was familiar with the history of both of the S. F. R. D. cars in controversy, and also the tank car. It was shown, without objection, by witnesses who were familiar with the history of these cars, that they were in the service prior to July, 1911, and that they had not been sent to the shop for general repairs since that date. It thus appears that at the trial the appellant had the benefit of the testimony which, in the motion for continuance, it had asked time to enable it to procure.

In regard to the alleged negligence of the engineer in permitting his air to become out of order, appellant contended that it should have had an opportunity "to look into the air on each of the fifty-one cars in the train, and that it would require time to do so."

The original complaint alleged that "the air on the train failed to work properly and the train could not therefore be handled or controlled properly," and that "because of the defective condition of the air as aforesaid said train began jerking and swaying violently, and so continued until plaintiff was injured."

It will thus be seen that these allegations of negligence as to the engineer set up in the amended complaint did not introduce any new or original cause of action, but were only a different method of stating a cause of action that had already been set forth. Further-

more, it was surplusage for the pleader to allege the specific causes or conditions that caused the violent and unusual jerking. It was entirely sufficient to have alleged that the engineer of appellant was negligent in causing a violent and unusual jerking of the train which caused and contributed to the injury of the plaintiff, without setting forth the particular defects or conditions that caused such jerking. These were matters to be developed by the testimony, and the appellant had sufficient notice under the general allegations of negligence caused by a violent and unusual jerking of the train to require it to make all investigation it deemed necessary to meet such allegation.

4. Appellant urges that the court erred in permitting members of the train crew to testify that they had some trouble with the air appliances on the train. Appellant contends that this testimony was incompetent, and also that it was prejudicial for the reason that it authorized the jury to conjecture that it had something to do with the alleged jerking of the train at the time of the injury.

Appellant says that the same witnesses who testified that there was trouble with the air on certain cars of the train before the same reached Page also showed that the cars in which there was a defective condition as to the air were set out of the train before it arrived at Page, and therefore the defective condition in those cars could not have been competent to show that the jerking of the train at the time of the injury was caused by a defect in the air in these cars. If, as counsel say, "the witnesses who testified to the trouble testified that the cars were set out on account of the trouble, and that there was no trouble at Page," then the testimony could not be prejudicial to appellant for the reason that the jury could not have concluded that those cars were in the train at the time of the injury. But, conceding that there was testimony to the effect that the air on some of the cars in the train was defective, that the testimony was competent at the time it was offered as tending to show that this de-

fective condition caused the jerking of the train, if the testimony was afterward rendered incompetent because it was shown that these cars were removed before the injury occurred, then appellant, after this testimony was introduced, should have moved to exclude the testimony after its incompetency had thus been made to appear. The appellant simply rested on the objection that it made to the testimony at the time it was offered, and it is not in an attitude to complain, because the testimony at that time was clearly competent and relevant to the issue. Moreover, the court told the jury that the plaintiff would not be entitled to recover if the death of Old occurred from any negligence of the defendant other than that alleged in the complaint. The negligent jerking of the train was alleged to have occurred at Page. The effect of the instruction was to limit the jury to a consideration of the condition of the cars in the train at the time of the alleged injury at Page.

The court permitted, over the objection of appellant, certain witnesses to testify that they had observed the equipment furnished by railroads in this country as to ladders and hand-holds on box and refrigerator cars, and that from 50 to 75 per cent, and a greater per cent of refrigerator cars, were equipped with ladders and hand-holds on the end of the cars, and that in their opinion it was much safer for brakemen on cars thus equipped to pass from the top of a high car to the platform of a low car than it was to pass from high to low cars that have only ladders or hand-holds on the side of the car near the end, as was the case with the cars complained of.

The witnesses qualified as experts by showing that they had been engaged in train service as brakemen or switchmen from ten to twenty years, and that they were familiar with the method in which the cars are equipped in order to enable them to perform their duties.

Appellant contends that in the absence of a statute requiring railroads to place hand-holds or grab-irons on the ends of their cars, that there is no duty upon the railroad company as between it and its employees to

place such hand-holds thereon, and therefore evidence showing that there were no such appliances does not tend to show negligence. It was the duty of appellant, regardless of any statute prescribing how freight trains should be equipped for the safety of employees, to exercise ordinary care to furnish such employees with a reasonably safe place in which, and with reasonably safe appliances with which, to work. See *Railway Co.* v. *Holmes,* 88 Ark. 181; *Wilcox* v. *Hebert,* 90 Ark. 145. The testimony was competent on the issue as to whether or not appellant was negligent.

In *Oakleaf Mill Co.* v. *Littleton,* 105 Ark. 392, we held that the test of a master's duty in furnishing appliances and a place to work is what a reasonably prudent person would have ordinarily done in such a situation, and proof of what was the custom of others under like conditions and circumstances is evidence, but not conclusive, of what a reasonably prudent person would ordinarily do. In the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling,* 107 Ark. 476, 156 S. W. R. 171, we held that the failure of the company to provide grab-irons or hand-holds necessary for the reasonable safety of brakemen in the performance of their duties in passing from one car to another was actionable negligence. It was the duty of appellant to exercise ordinary care to equip its train with such appliances in the way of ladders, grab-irons and hand-holds as would furnish its employees with reasonably safe appliances to do their work, and if appellant did not exercise such care to equip its cars with such appliances as were in common use by other railroads on similar cars similarly situated, evidence of this fact would be proper for the consideration of the jury in determining whether or not appellant was negligent. *See Dooner* v. *Del., etc., Canal Co.,* 164 Pa. St. 17.

There was no error prejudicial to appellant in refusing to permit it to show that under the rules of the Interstate Commerce Commission appellant was not required to put hand-holds on the ends of the cars com-

plained of until July 1, 1916, unless the cars were shopped for general repairs. This ruling of the court was not prejudicial to appellant because the effect of the testimony was only to show that in the opinion of the Interstate Commerce Commission it was necessary for cars like the one under consideration to be equipped with hand-holds or end ladders in order to insure, as far as possible, the safety of employees who were required to use them. The fact that the Interstate Commerce Commission postponed the time for equipping the cars that were then in service did not relieve the appellant of the duty of exercising ordinary care to furnish its employees with safe appliances, and to provide them a safe place in which to do their work. The Interstate Commerce Commission was without power to exempt the carrier from liability caused by its negligence.

5. Witness Clayton testified that he was a locomotive engineer, with seventeen years' experience. On his examination-in-chief, he testified that he was the engineer in charge of the engine on the train at the time Old was injured. He testified that there was no lurching or jerking of the train; that the engine and the air were in good condition and were working all right.

On cross examination he was asked the following question: "Assuming that there was violent lurching and jerking of the train, what, in your opinion, could have caused it?" His answer was: "It could only have been caused by the engineer letting off too much steam." The appellant objected to the testimony, on the ground that it was incompetent and irrelevant. Appellant did not object on the ground that it was not responsive to the examination-in-chief. Testimony had been introduced tending to prove that after the train began moving out of Page there was a violent and unusual jerking. It had been shown also that the engine and the air were in good condition, and that the train had moved out up grade more than 100 yards, tending to show that the slack had been taken out.

Appellee had the right to show, from the opinion of an expert, assuming that the circumstances as detailed were true, that the violent jerking of the train was caused by the engine letting off too much steam. It was a question for the jury, under the testimony, to determine whether or not there was a jerking of the train, and, if so, what caused it. See *Midland Valley Rd. Co.* v. *Lemoyne*, 104 Ark. 327-341.

6. Appellant next urges that the court erred in refusing to direct a verdict for the defendant. This we consider the most difficult question in the case, and it has given us the greatest concern, but we are of the opinion that the case can not be distinguished in principle on the facts from the recent cases of *St. Louis, I. M. & S. Ry. Co.* v. *Owens*, 103 Ark. 61, and *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling, supra.*

In the latter case, after reviewing the evidence and the authorities, we said: "The death of Hempfling was consistent only with the conclusion that he fell from the car by reason of the fact that he had no grab-irons by which to hold as he was attempting to pass from the twelfth to the thirteenth car, as mentioned in the testimony. The jury were not invited to guess, without any proof, as to the probable cause of Hempfling's death. The law is well settled that where there are no eye-witnesses to the injury and the cause thereof is not established by affirmative or direct proof, then all the facts established by the circumstances must be such as to justify an inference on the part of the jury that the negligent conditions alleged produced the injury complained of. Where such is the case, the jury are not left in the domain of speculation, but they have circumstances upon which, as reasonable men, they may ground their conclusions. Negligence that is the proximate cause may be shown by circumstantial evidence as well as by direct proof."

In quoting from the Supreme Court of Missouri, we further said: "In actions for damages on account of negligence, plaintiff is bound to prove not only the negli-

gence, but that it was the cause of the damage. This causal connection must be proved by evidence, as a fact, and not be left to mere speculation and conjecture. The rule does not require, however, that there must be direct proof of the fact itself. This would often be impossible. It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other that the conclusion therefrom may be fairly inferred.''

Applying these principles to the facts in hand, we are of the opinion that the jury were warranted in finding that the death of Old resulted through the negligence of appellant in causing the violent jerking of the train, which, concurring with its negligence also in not equipping its cars with necessary ladders, grab-irons or handholds on the end thereof in order to enable Old to pass from the S. F. R. D. car to the tank car, caused him to fall between said cars and produced his death.

The jury were warranted in finding that when Old came out of the station at Page with his orders he proceeded, with his lantern in his hand, to mount the cars where his duty called him; that he was passing from the top of the refrigerator car to the tank car, and that on account of the same not having been provided with any grab-irons or hand-holds, in attempting to make the passage as the cars lurched forward, he was thrown between them; that if the cars had been provided with the necessary grab-irons he might have saved himself, notwithstanding the sudden jerking or lurching of the cars by holding on to these grab-irons. It was shown that there was only one opening in the train between where Old (or the man whom the jury might have found to be Old), was last seen, and the end of the cars where the jury could have found, and must have found, that Old fell. The intervening space before he came to the space through which he must have fallen was between two refrigerator cars of the same height, and it required only a short step to make this passage. Old being a large man, stout and active, it was not at all probable that he would have fallen between the two refrigerator cars. The character and the nature of the wounds that Old

received, and the position in which his body was found, warranted the jury in finding that the only opening through which Old could have fallen was between the refrigerator car and the tank car. It was shown that to make the passage between the refrigerator car and the tank car, the brakeman would have to come down the ladder on the right-hand or east side of the refrigerator car. This ladder stood out from the body of the car two or two and a half inches, and was about four to six inches from the corner of the car. To get on the tank car from this ladder the brakeman would have to throw himself around the corner of the refrigerator car and step diagonally across on the platform of the tank car, and catch to the side railing on the outer edge of the tank car. This railing on the tank car was twenty-four inches from the end of the tank car, making a distance of five feet from the side ladder or hand-hold on the refrigerator car to the nearest appliance on the tank car that a brakeman could use as a hand-hold. To make the passage he would have to release his hand-hold on the refrigerator car in order to secure a hand-hold on the side railing of the tank car. He could only pass from the refrigerator car to the tank car by stepping around the corner of the refrigerator car diagonally toward the center of the tank car. The position that his body was in, the manner in which his legs were injured, the fact that his legs were cut off by the wheels between the feet and the knees, and the fact that the feet were on the outside of the east rail, about the distance of the side ladder from the rail, and that blood and small pieces of bone were found on the east rail and nowhere else, all tended to prove and warranted the jury in finding, that Old fell from the train while attempting to make the passage from the refrigerator car to the tank car in the manner indicated, and that if the train had been provided with the necessary grab-irons or hand-holds on the ends, that he might have made the passage and protected himself against the danger, notwithstanding the violent lurching and jerking of the train. The fact that immediately after this last jerking of the train

some one was heard to cry out "Oh, Oh!" and that the body of Old was soon thereafter discovered, tends to show a causal connection between the lurching of the train and his death.

We are of the opinion that it was a question for the jury, under the circumstances developed in evidence, as to whether or not the death of Old was caused by the negligence of appellant as alleged in the complaint.

7. Appellant relies upon several cases in this court wherein we have held that there must be some causal relation between the injury and the negligence, and that the happening of the accident is not of itself sufficient to show such causal connection, and that where the cause of the injury is purely a matter of conjecture, surmise, speculation or supposition there can be no recovery, citing, among them, the recent cases of *Jonesboro, L. C. & E. Rd. Co.* v. *Minson,* 102 Ark. 581; *Denton* v. *Mammoth Spring, E. L. & P. Co.,* 105 Ark. 161, and *Midland Valley Rd. Co.* v. *Enins,* 109 Ark. 206, 159 S. W. 214.

The above doctrine was announced in cases where the facts showed that the causal connection between the injury and the negligence was merely conjectural. Each case, of course, must depend upon its own facts, and as we view the evidence in this case it is clearly distinguishable from the cases last mentioned, but does come under the doctrine, as already stated, announced in *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling, supra,* and *St. Louis, I. M. & S. Ry.* Co. v. *Owens, supra,* where the facts as proved by the circumstances warranted a finding that the negligence alleged caused the injury, and that the causal connection was not a mere matter of conjecture, but was proved by substantial, even though circumstantial, evidence.

8. The appellant urges that the court erred in excluding testimony to the effect that Old admitted that he was injured because he attempted to catch the train and slipped. The record shows that about an hour and a half after the injury a witness asked Old how the injury occurred. Old at that time had begun to sink. The witness

shook him several times and aroused him sufficiently for him to speak in a very low tone, and being asked the third time how the injury occurred, Old stated that he tried to catch the train and slipped and fell. On being asked if he tried to catch the train or the caboose, he said the train.

Under the Employers' Liability Act and its amendment of April 5, 1910, appellee, as administrator of the estate of Leslie Old, was entitled to recoverable damages by way of compensation for the financial loss to the widow and child of deceased by reason of the death of the husband and father, also appellee could recover for the conscious pain and suffering which the husband and father endured after the injury, which survived to appellee as the personal representative of Old for the benefit of his widow and child. See act of Congress, April 22, 1908, section 1, and section 9 added by amendment, April 5, 1910.

The statute, as to the loss of contributions on account of the death of the husband and father, creates a right of action for the benefit of the widow and the next of kin wholly independent of the right of action given to the injured person for the pain and suffering which he endured on account of the injury. See *Mich. Cent. Rd. Co.* v. *Vreeland,* 227 U. S. 59. The latter right of action under the amendatory statute of April 5, 1910, was made to survive to his personal representative for the benefit of his widow and next of kin. In *St. Louis & S. F. Rd. Co.* v. *Conarty, supra,* we said: "The statute as amended forbids the prosecution of more than one action and permits only one recovery; but the action is prosecuted, after the death of the injured person, for the benefit of the widow and next of kin, and may include compensation for the pain and suffering endured by the injured person as well as the pecuniary loss of earnings and contributions; in other words, compensation for all of the damages resulting from the injury for which the statute provides a remedy inures after the death of the injured person to the benefit of the widow and next of kin, but must

be recovered in one action." See, also, *Gulf, Col. & S. F. Ry. Co.* v. *McGinnis,* 228 U. S. 173.

The admissions of a deceased person against his interest are competent only when the action is for or against him in his own right. Conceding (without deciding) that the testimony offered to show the admissions would have been competent and admissible as declarations against interest, and conceding that if the appellant had asked that the testimony be not excluded, but limited to the right of recovery growing out of the cause of action for pain and suffering that the court would have erred in excluding the testimony; nevertheless there was no privity of interest between Old and his wife and child so far as their right to recover for the loss of contributions on account of his death is concerned. The testimony, if competent, in the right of action given them for this loss was purely hearsay. As stated by Mr. Greenleaf: "The ground upon which admissions bind those in privity with the party making them is that they are identified in interest; and, of course, the rule extends no further than this identity of interest." 1 Greenleaf, Ev., § 180.

In the case of *Graysonia-Nashville Lumber Co.* v. *Carroll,* 102 Ark. 460, we held: "Where two causes of action are united in one action, evidence offered by defendant which was admissible in one case, but not in the other, was properly excluded where the defendant did not ask that the testimony be limited to the cause to which it was applicable."

In *Murphy* v. *St. Louis, I. M. & S. Ry. Co.,* 92 Ark. 159, we held that "it was error to permit the defendant to offer in evidence a written statement made by deceased in his lifetime to the effect that his mother was dead, as there is no privity between the next of kin and the deceased."

Here, under the above ruling, the testimony, to say the least, was clearly incompetent in the right of action for the loss of contributions. If incompetent for any purpose, as the appellant did not ask that it be limited to the right of action for pain and suffering, the court did

not err in excluding it for all purposes. Here the appellee did not desire the testimony for any purpose, and the testimony, as already shown, was wholly incompetent in the cause of action for loss of contributions. Therefore, it was the duty of appellant who alone desired the testimony, to ask that it be directed or limited to the right of action in which it was competent, if competent at all. Not having done so, it is in no position to complain because the court excluded the testimony for all purposes.

Where the court excludes testimony which is incompetent in the whole case for one purpose but competent for another, it is the duty of the party who desires the testimony to be admitted for the purpose for which it is competent to request the court to have it admitted for that special purpose. The ruling of the court in excluding testimony will be upheld, if any ground justified the ruling, in the absence of a specific request by the opposing party to have the testimony considered for the purposes for which it is competent. In *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482, testimony was admitted over a general objection that was competent in one case, but incompetent in the other, and we said that it was the duty of the party objecting to ask that the testimony be limited solely to the case in which it was competent. The cases of *Lumber Co.* v. *Carroll, supra,* and *Ry. Co.* v. *Raines, supra,* are in harmony and establish the same rule. See, also, *Central Coal & Coke Co.* v. *Niemeyer Lumber Co.,* 65 Ark. 106; *Tooley* v. *Bacon,* 70 N. Y. 34; *Emrich* v. *Union Stock Yards,* 86 Md. 482; *Egger* v. *Egger,* 135 Am. St. Rep. 567.

It is a well-established rule that in actions in a State court to enforce rights given by a Federal statute the rules of evidence of the State court must control, unless otherwise provided by the Federal law. Wigmore on Evidence, § 5. In the absence of a statute prescribing the rule of evidence upon the subject, the law of the forum will govern.

9. Only a few of the prayers for instructions on the part of appellant which the court refused are set forth in

the abstract. And the appellant does not urge, in brief of counsel, any specific objection to the refused prayers which it sets out.

No specific objection to the rulings of the court in the giving and refusing of prayers for instructions are abstracted. Therefore, we will not consider any specific objection now urged by counsel to the rulings of the court in passing on the instructions. We find no inherent defects in the instructions which the court gave at the instance of the appellee and of its own motion. The court correctly submitted the issue as to whether or not appellant was negligent as alleged in the complaint, and the issue as to whether or not there was a causal relation between the acts of negligence as alleged and the death of Old. No new principle is announced and no useful purpose can be subserved by setting out the instructions and commenting upon them in detail.

Counsel say that the court erred in giving appellee's prayer for instruction on the measure of damages, because it does not state the measure of damages under the Federal law, and because it does not separate the amount found for pain and suffering from the amount found for compensation for loss of contributions.

The instruction follows the rule announced by this court in *Railway Co.* v. *Sweet,* 60 Ark. 550, for ascertaining the measure of damages for the widow and children. There we said: "The measure of their damages is what the jury may deem a fair and just compensation with reference to the pecuniary injuries resulting from the death of the husband and father. How is this compensation to be determined? By taking into consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for, and disposition to, labor, and the probable increase or diminution of that ability with the lapse of time; deceased's earning power, rate of wages, and the care and attention which one of his disposition and character may be expected to give his family. All these are proper elements for the consideration of the jury in determining the value of the life taken. From the amount thus ascertained, the per-

sonal expenses of the deceased should be deducted, and the balance reduced to its present value, should be the amount of the verdict." *St. Louis, I. M. & S. Ry. Co.* v. *Haist,* 71 Ark. 258-68; *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443-54; *St. Louis, I. M. & S. Ry. Co.* v. *Garner,* 90 Ark. 19-24; *Ark. S. W. Rd. Co.* v. *Wingfield,* 94 Ark. 75; *St. Louis, I. M. & S. Ry. Co.* v. *Hartung,* 95 Ark. 220; *Fort Smith & Western Ry. Co.* v. *Messek,* 96 Ark. 243-48.

We see no reason why there should be a different rule under the Federal statute. This statute, like ours, is modeled after Lord Campbell's act. The Supreme Court of the United States has announced that the damages sustained by the widow and children are the benefit which might be reasonably expected from the husband and father in a pecuniary way had he lived. See *Mich. Cent. Rd. Co.* v. *Vreeland,* 227 U. S. 59; *Am. Rd. Co.* v. *Didricksen,* 227 U. S. 145. The same rule obtains generally under statutes similar to ours. See other authorities cited in brief of appellee.

In *Choctaw, O. & G. Ry. Co.* v. *Baskins,* 78 Ark. 355, we said: "Deceased was a stout, healthy, man, fifty-six years of age, actively engaged in farming, with an earning capacity, of $400 to $500 per annum. He labored in the field himself, as well as superintended the work on his farm. His wife and daughters, and one of his sons (one of his children being a minor), lived with him on the farm. There is no direct proof as to the amount of his contributions to the support of his family, but the presumption will be indulged that, as they lived with him on the farm, a reasonable amount of his earnings was contributed to their support. There is not, under all those circumstances, an entire absence of proof of those contributions. We must presume that he discharged his duty in some measure to them."

Applying the above rules to the facts in evidence, we are of the opinion that the judgment was not excessive. Old was twenty-five years old when he was killed. He had an expectancy of thirty-five years. His wife was twenty-four years old, and their baby was only five weeks

old. There was proof to warrant a finding that his net earnings per annum would be $720. According to annuity tables, it would require $14,518 to purchase a life annuity of $700 for one of Old's age. This amount deducted from the judgment would leave the sum of $3,482, as the amount to be recovered for the pain and suffering which he endured. This calculation does not take into account the probable increase in earning power.

We are of the opinion that the judgment, when all of the proper elements of damages are considered, is not excessive. Since the judgment was not excessive, the form of the verdict could not have been prejudicial to appellant. Appellant, at the time the verdict was rendered, made no objection to its form. He did not ask that the jury be required to return separate amounts for pain and suffering, and for loss of contributions. The widow and child, under the law, were entitled to the entire amount. They were the only persons having a pecuniary interest in the amount of damages recovered, and it could not prejudice appellant because these damages were returned in a lump sum. Appellant will be protected in the payment of the judgment as rendered, since all of the parties who had an interest in the same are represented in the suit. See *St. Louis, I. M. & S. Ry. Co.* v. *Hutchinson,* 101 Ark. 424.

Finding no reversible error, the judgment is affirmed.