ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v*. ANDERSON.

Opinion delivered February 8, 1915.

1. CARRIERS—INJURY TO EMPLOYEE—INTERSTATE COMMERCE—SUFFICIENCY OF THE EVIDENCE.—In an action for damages due to negligence by an employee, against a railroad company, *held*, under the facts, the jury was warranted in finding that the work the plaintiff was engaged in at the time he received his injuries was interstate commerce, within the meaning of the Federal Employer's Liability Act (Act April 26, 1908).

2. INTERSTATE COMMERCE—EMPTY CARS.—The hauling of empty cars from one State to another is interstate commerce, within the meaning of the Federal Employer's Liability Act.

3. NEGLIGENCE—FEDERAL EMPLOYER'S LIABILITY ACT—CONTRIBUTORY NEGLIGENCE.—In an action by an employee against a railroad company for damages growing out of negligence, brought under section 3 of the Federal Employer's Liability Act, where the negligence of the employer does not consist in the violation of a statute, the contributory negligence of the employee operates in diminution of the damages so that the recovery shall be only the proportionate amount, bearing the relation to the full amount of damage, as the negligence attributable to the employer bears to the entire negligence attributable to both.

4. Negligence—interstate commerce—injury to railway employee—violation of federal statute—contributory negligence.—In an action for damages for an injury to an employee of a railroad company, received while working on a train engaged in interstate commerce, the plea of contributory negligence will be unavailing where the injury was caused by a defect in an automatic coupler, in violation of the Safety Appliance Act.

5. Negligence—injury to railway employee—contributory negligence—question for jury.—Where safety coupling appliances have not been provided, or where those provided have got out of repair, and it becomes necessary to couple cars without them, it is a question of fact for the jury to determine, under the particular circumstances of each case, whether an employee, who went between the cars to couple them, was guilty of negligence in so doing.

Appeal from Clay Circuit Court, Eastern District; W. J. Driver, Judge; affirmed.

### STATEMENT BY THE COURT.

This was an action by L. O. Anderson against the St. Louis Southwestern Railway Company under the Employers' Liability Act of April 26, 1908 (Fed. Stat. Ann. 1909 Supp., p. 584), to recover damages for injuries received by him while in the employ of the railway company as a switchman.

The facts are as follows: The plaintiff, Anderson, was at the time he received his injuries a switchman in the employ of the defendant railway company, and was injured on the night of the 18th of August, 1912, at Illmo, Missouri, while attempting to couple two cars equipped with automatic couplers. The pin lifter is an iron rod with a shank at each end. One shank rested upon the coupler and the other upon an adjacent corner of the car. To effect a coupling, the trainman raises the shank near the end of the car to a horizontal position, thereby placing the opposite shank in a vertical position. To the opposite shank is attached a chain, the other end of which is connected with the coupling pin. It is this pin which, in descending upon the impact of two cars, effects the coupling. Standard automatic couplers, when in good working order, are so adjusted that the brakeman may

lift the long shank to a horizontal position where it remains locked by the operation of a clutch, until the coupling is effected by the impact of the cars. The coupler in question had become so defective that the clutch designed to hold it in position failed to accomplish its purpose. In such event it becomes necessary for the person who makes the coupling to hold the longer shank in a horizontal position until the coupling is made in order that the pin may be in the proper place.

At the time Anderson was injured, he testified, the automatic coupler was in such a defective condition that it was necessary for him to hold the shank until the coupling was effected. He said that when the two cars came together the drawbars had too much slack and the pin lifter of the coupler was too long and that his finger was caught between the pin lifter and the end of the sill of the car.

In short, there was testimony from which the jury might have found that the drawbars were defective and that on account of the defect in the automatic coupler the impact of the cars caught appellee's hand between the long shank of the pin lifter and the end of the car and thus occasioned his injury.

Other testimony was adduced by him tending to show the character and extent of his injury, but inasmuch as no complaint is made that the verdict is excessive, it is not necessary to abstract this testimony.

The evidence on the part of the defendant tended to show that the automatic coupler was not in a defective condition. Other testimony will be stated or referred to in the opinion. The court of its own motion gave the following instructions:

"No. 1. You are instructed that it is the duty of the master, in this instance the St. Louis Southwestern Railway Company, to furnish the servant, in this instance the plaintiff in the case, with safe appliances with which the servant may perform his duties, and to keep such appliances safe, and the failure on the part of the master to discharge this duty makes him liable in law for any in-

juries received by the servant in consequence of his use of such appliances so furnished."

"No. 2. And in this case, if you find from a preponderance of the evidence that the plaintiff would not have been injured but for the plaintiff's use of an unsafe coupler, drawheads or parts thereof, then your verdict will be for the plaintiff, otherwise you will find for the defendant."

"No. 3. You are instructed that unless you find from the evidence in this case that the use of such unsafe coupler, drawheads, or parts thereof, was the proximate cause of the injury complained of, then your verdict will be for the defendant."

The jury returned a verdict in favor of the plaintiff and the defendant has appealed.

*S. H. West* and *J. C. Hawthorne,* for appellant.

1. Under plaintiff's own testimony he was not engaged in interstate commerce. 34 S. C. Rep.; 109 Ark. 206.

2. Plaintiff assumed the risk, if there were two ways to make the coupling, and one was more dangerous than the other, and he voluntarily chose the more dangerous way, and was thereby injured, when by using the less dangerous way he would not have been injured. 70 Ark. 603; 56 *Id.* 232; 97 *Id.* 486; 18 Fed. 229; 17 *Id.* 882; 84 *Id.* 772.

*Spence & Dudley* and *R. P. Taylor,* for appellee.

1. Defendant was an interstate carrier, and the Federal Employers' Liability Act applies. 100 Ark. 467; 106 *Id.* 421; 229 U. S. 146; 223 *Id.* 473.

2. The defenses of assumed risk and contributory negligence were not ignored, but under the "Federal Act" they can not be invoked. 3 U. S. Com. Stat. 3174; 106 Ark. 421.

Hart, J., (after stating the facts). It is insisted by counsel for the defendant that the testimony is not sufficient to warrant a finding by the jury that the plaintiff was engaged in interstate commerce at the time he was

injured. The testimony on that point most favorable to the plaintiff is the following:

Illmo, Missouri, is a station on defendant's line of road where five switch crews work at night. The plaintiff at the time he was injured was engaged in coupling a car, marked "bad order," to a coal car which had a card on it on which were the words, "Bush, Illinois." One of the witnesses for the defendant said that the train from which this car was taken came in from Poplar Bluff, Missouri, or Paragould, Arkansas, and that the train always had cars from points outside of the State of Missouri.

Another witness for the defendant stated that Bush, Illinois, was in the mining district and that nearly all the coal cars which arrived at Illmo were consigned to some point in the coal mining district in Southern Illinois.

Another witness testified that at the time Anderson was injured he was engaged in breaking up a train and making up one, and that the coal car in question was billed to Illmo and listed to him for the mines in southern Illinois.

The plaintiff himself testified that at the time he was injured he was rounding up the coal cars to put them in the train under directions from the yardmaster and that the destination of the train was to the coal mines in Illinois.

There was also testimony from which the jury might have inferred that the train which brought in the cars came from the State of Arkansas.

(1) Under this state of facts the jury was warranted in finding that the work the plaintiff was engaged in at the time he received his injuries was interstate commerce within the meaning of the act.

(2) In the case of *North Carolina Railroad Company* v. *Zachary*, 232 U. S. 248, the court said that the hauling of empty cars from one State to another is interstate commerce within the meaning of the act. See, also, *St. Louis & S. F. Rd. Co.* v. *Conarty*, 106 Ark. 421.

It is next contended by counsel for the defendant that the court erred in giving instruction No. 1, but in this contention we do not agree with them. The third section of the Employers' Liability Act contains the following language:

"The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

(3) Under this section the rule approved by the Supreme Court of the United States is that the rule of proportionate negligence applies, that is, that where the negligence of the employer does not consist in the violation of a statute the contributory negligence of the employee operates in diminution of the damages so that the recovery shall be only the proportionate amount, bearing the same relation to the full amount as the negligence attributable to the employer bears to the entire negligence attributable to both.

The section also contains the following provision: "Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

(4) So, according to the evidence adduced by the plaintiff, he was injured on account of a defect in the automatic coupler in violation of the safety appliance act. The Supreme Court of the United States has held that the question of comparative negligence does not arise where the negligence of the carrier consists in the violation of a Federal statute, for in such cases the defense of contributory negligence is entirely abrogated by the provision of the act above quoted. *Grand Trunk Western Railway Co.* v. *Lindsay*, 233 U. S. 42.

Finally it is insisted by counsel for the defendant that the court erred in refusing to give instruction No. 6 requested by it. The instruction is as follows: "The

jury is instructed that if there were two ways for the plaintiff to perform his duty in coupling the cars, and one was more dangerous than the other, and he voluntarily chose the more dangerous way, and was thereby injured, when, by using the less dangerous way, he would not have been injured, he assumed the risk in so choosing, and your verdict will be for the defendant.''

(5)   This contention has been decided adversely to the defendant in *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Thompson,* 82 Ark. 11.   See, also, *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443.   In the *Henrie* case, the court said:

''When safety coupling appliances have not been provided, or where those provided have got out of repair, and it becomes necessary to couple cars without them, it is always a question of fact for a jury to determine, under the particular circumstances of each case, whether an employee who went between cars to couple them was guilty of negligence in so doing.   It is not correct to say, as a matter of law, after balancing the chances, that an employee was necessarily guilty of negligence because he selected a method of doing his work which turned out to be the more dangerous way.   This, as we have already said, is to make the servant the insurer of his own safety, notwithstanding the fact that the master has failed to discharge his duty.''

It follows that the judgment must be affirmed.